MASSACHUSETTS BONDING & INSURANCE COMPANY and another, Appellants, v. INDUSTRIAL COMMISSION and another, Respondents.

*November 6—December 1, 1959.*

For the appellants there was a brief by *Brennan, Brennan & Brennan* of Milwaukee, and oral argument by *Joseph K. Brennan.*

For the respondent Industrial Commission the cause was argued by *Mortimer Levitan,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

HALLOWS, J. The only issue is whether Tate, the employee, was intoxicated and, if so, whether that intoxication was the cause of the accident so as to reduce by 15 per cent whatever compensation Tate might be entitled to from the appellants. On the issue of intoxication, to reduce the amount of compensation, the employer has the burden of proving all facts necessary for such 15 per cent decrease. This burden is analogous to the rule which places the burden of proof on the employee when he seeks additional compensation of 15 per cent because an accident is caused by a violation of the commission's orders or the safe-place statute. *Hipke v. Industrial Comm.* (1952), 261 Wis. 226, 52 N. W. (2d) 401; *Skelly v. Industrial Comm.* (1949), 254 Wis. 315, 36 N. W. (2d) 58.

Sec. 102.58, Stats. 1955, 16 W. S. A., p. 564, provides in part: "Where injury results from the intoxication of the employee, the compensation, and death benefit provided herein shall be reduced 15 per cent." This is a penalty clause and was added to the Workmen's Compensation Act by ch. 599, Laws of 1913. See *Nutrine Candy Co. v. Industrial Comm.* (1943), 243 Wis. 52, 9 N. W. (2d) 94; *Gimbel Bros. v. Industrial Comm.* (1938), 229 Wis. 296, 282 N. W. 78. Under this section the employee not only must be intoxicated, but the injury must result from the intoxication. This section recognizes an employee may be intoxicated and while in such condition receive an injury not caused by his intoxication.

Whether Tate was intoxicated and whether it caused the injury presented questions of fact for the commission to determine. *Nekoosa-Edwards Paper Co. v. Industrial Comm.* (1913), 154 Wis. 105, 141 N. W. 1013; *Gimbel Bros. v. Industrial Comm., supra.* Since the employer had the burden of proof on this issue it must meet it. If the employer fails to convince the Industrial Commission, or if the commission has a legitimate doubt about the alleged intoxication or its causal relationship with the injury, then it is the duty of the commission to deny the claim for a decrease in the compensation. This is similar to the duty of the commission to deny a claim for compensation when the employee has not met his burden of proof in establishing the facts entitling him to compensation. *Unruh v. Industrial Comm.,* ante, p. 394, 99 N. W. (2d) 182; *Johnston v. Industrial Comm.* (1958), 3 Wis. (2d) 173, 87 N. W. (2d) 822; *Soper v. Industrial Comm.* (1958), 5 Wis. (2d) 570, 93 N. W. (2d) 329; *Beem v. Industrial Comm.* (1943), 244 Wis. 334, 12 N. W. (2d) 42.

The only testimony on Tate's intoxication was given by Juda. He testified, "I think he was drinking," and "It seems to me he was [intoxicated when he came to pick up his pay check]." Juda did not notice how Tate walked, but stated Tate's "speech wasn't just like he was sober." The appellant claims this testimony represents a categorical statement of Juda's opinion that Tate was intoxicated seconds prior to his fall down the steps. Juda also testified that he had Tate indorse the check and he gave him cash, and that Tate did not tell him where he was going when he left. Juda thought Tate had been drinking quite a bit and told Tate he was sorry to have to give him the check. Juda did not question whether Tate was in good enough shape to be able to go down the stairs and out the back door. He stated he could not be responsible if something might happen to Tate by the

time he got out of the building. This evidence, the appellant contends, satisfies its burden of proof unless some rebuttal evidence were introduced.

However, Juda also testified as follows:

"*Q.* . . . . Did you think he was in good enough shape to take care of himself? *A.* A taxi bring him. He got his tools and everything.

"*Q.* Well, from that would you think he was in good enough shape to get out again? *A.* Well, I don't know what I should say.

"*Q.* Well, whatever you thought. Can you answer that question? *A.* How can I answer that? He come and get everything, he must be all right. Taxi waiting for him there so."

Apparently the only basis for Juda's opinion was that Tate's speech was not "just like he was sober," and Juda's knowledge of Tate and his drinking. There was no other observation upon which he based his opinion. Juda's testimony that Tate was intoxicated was far from convincing. Opinion evidence, whether of an expert or a layman, is no better than the basis upon which it is founded. Unless the basis for a layman's opinion is given, such opinion cannot be evaluated and is entitled to little, if any, weight.

The credibility of a witness and the persuasiveness of the testimony are for the Industrial Commission to determine. Uncontradicted opinion evidence of a layman is not binding on the commission if such evidence fails to convince it. The Industrial Commission is not bound to accept as a fact uncontradicted opinion testimony of a layman as to intoxication of an employee where no substantial basis for that opinion is in evidence. Laymen may well differ on what constitutes intoxication.

The appellant contends the commission must accept uncontroverted opinion evidence and relies on *Richardson v.*

*Industrial Comm.* (1957), 1 Wis. (2d) 393, 84 N. W. (2d) 98. There the only testimony given was by the applicant on the issue of whether he was within the scope of his employment when injured. The Industrial Commission rejected the testimony. This court in reversing stated there must be in the uncontroverted testimony some inherent inconsistency before the commission would be warranted in entertaining a legitimate doubt, and it could not rely solely upon its cultivated intuition in rejecting such testimony.

The trial court correctly distinguished the *Richardson Case* from the facts of this case as follows: "However, the *Richardson Case* is not applicable to the instant case for the reason that the testimony respecting intoxication is opinion evidence given by a layman. It is within the province of the trier of facts to give such weight to opinion evidence as it is entitled to in the discretion of the trier of facts, and, furthermore, opinions have probative value only when based upon premises satisfactorily proved in the record."

The assistant attorney general attempts to distinguish the *Richardson Case* from the facts here by stating that in the *Richardson Case* the examiner who saw and heard the witness disbelieved, while this court believed, and "Both relied on educated intuition—that's the very best kind! Judges of credibility must of necessity rely primarily on intuition, and the educated intuition (or sixth sense) developed by experienced and skilful fact finders is far better than the variety generally relied on by men and women—especially women." The latter part of this learned observation could only be made and believed by a bachelor.

The finding of the commission that there was no competent proof that Tate's injury resulted because of intoxication must be sustained. There was no proof of any kind as to how the accident happened. There were no witnesses. To find Tate's injury was caused by intoxication on the record pre-

sented would be speculative and conjectural. The appellant's contention of intoxication based on the evidence gives rise at the most only to a suspicion that such might be the case. See *Schmiedeke v. Four Wheel Drive Auto Co.* (1927), 192 Wis. 574, 213 N. W. 292. But assuming Tate was intoxicated, there is no proof the intoxication caused the injury. An inebriate as well as a nephalist may accidently fall down stairs.

*By the Court.*—Judgment affirmed.