LAGER and others, by their Guardian *ad litem,* and another, Appellants, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and others, Respondents.

*No. 246. Argued March 2, 1971.—Decided March 30, 1971.*
(Also reported in 185 N. W. 2d 300.)

652

For the appellants there was a brief and oral argument by *Robert Zum Brunnen* of Spooner.

For the respondent Department of Industry, Labor & Human Relations the cause was argued by *James P. Altman,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

For the respondents Arrowhead Pontiac-Buick, and Universal Underwriters Insurance Company there was a brief and oral argument by *Dennis C. Bailey* of Spooner.

HEFFERNAN, J.   The sole issue in this case was whether there was any credible evidence to support the department's finding that the deceased was not performing services growing out of and incidental to his employment as a car salesman at the time of his accident.

Because of the meager nature of the findings of the department and the total lack of the statement of the facts relied upon, this case presents considerable difficulty.[1]

---

[1] "Findings of fact

"That the deceased was employed by the employer as a car salesman; that on April 4, 1968, the deceased ate supper at the home of a friend with whom he lived, at which time he drank two old-fashioneds; that at about 6:50 p. m. he left the house; that at 7:30 p. m. he was seen drinking at the bar at Carol's River Bend Inn at Trego, Wisconsin; that he remained there until about 10 p. m.; that the deceased was involved in a fatal accident at the junction of Highways 53 and 63, a distance of about 1,000 feet

It is clear, of course, that the scope of judicial review as provided in sec. 102.23 (1) (c), Stats., limits the power of this court to set aside an order or award, with certain statutory exceptions, only when the findings of fact by the commission would not support the award. As we stated in *Unruh v. Industrial Comm.* (1959), 8 Wis. 2d 394, 398, 99 N. W. 2d 182, and as we have frequently reiterated:

"The question is not whether there is credible evidence in the record to sustain a finding the commission did not make, but whether there is any credible evidence to sustain the finding the commission did make."

It is our function, therefore, to find facts in the record, if we can, to support the department's determination. The burden is on the claimant to prove all facts essential to the claim to compensation. If the evidence presented raises any legitimate doubt, in the view of the department, as to the establishment of these facts, it is the department's duty to deny compensation. *Richardson v. Industrial Comm.* (1957), 1 Wis. 2d 393, 84 N. W. 2d 98; *Bowen v. Industrial Comm.* (1941), 239 Wis. 306, 1 N. W. 2d 77.

from Carol's River Bend Inn, shortly thereafter; that the reasonable inference to be drawn from the facts was that if the deceased had intended to sell a car that evening, he had abandoned that intention and elected to spend it socially; that the employer attempted to find the alleged interested customer and was never able to do so, even though the area involved was sparsely settled; that the lateness of the hour further supports the inference that he was not intending to show a car that evening; that the applicants have not met the burden of proof; that the deceased did not sustain an injury in the course of and arising out of his employment for the employer.

"Now, therefore, this

"Order

"That the application herein be and the same is dismissed."

As in any other workmen's compensation case, the claimant who wishes to recover death benefits has the burden of proving that, at the time of a fatal injury, the employee was performing services growing out of and incidental to his employment. There is, however, a special provision in respect to this standard that is applicable to an employee whose employment requires him to travel. Sec. 102.03 (1) (f), Stats., provides:

"Every employe whose employment requires him to travel shall be deemed to be performing service growing out of and incidental to his employment at all times while on a trip, except when engaged in a deviation for a private or personal purpose. . . . Any accident or disease arising out of a hazard of such service shall be deemed to arise out of his employment."

The statute has been interpreted to create a presumption that an employee who sets out on a business trip in the course of his employment performs services arising out of and incidental to his employment until he returns from his trip. *Tyrrell v. Industrial Comm.* (1965), 27 Wis. 2d 219, 133 N. W. 2d 810; *Armstrong v. Industrial Comm.* (1948), 254 Wis. 174, 35 N. W. 2d 212. Of course, the statute itself provides for an interruption in the employment during such time as an employee is on a "frolic of his own."

It is therefore apparent, in the instant case, that it is mandatory that the department determine whether or not the employee did in fact set out on a business trip. The question is one of fact, and the department's determination that he did in fact set out on a business trip, or its contrary determination that the employee did not set out on a business trip, will be sustained by this court if there is any credible evidence or reasonable inference therefrom to support the findings. *R. T. Madden, Inc. v. ILHR Department* (1969), 43 Wis. 2d 528, 169 N. W. 2d 73; *Hilbert v. ILHR Department* (1968), 40 Wis. 2d 598, 162 N. W. 2d 596; *Neese*

*v. State Medical Society* (1967), 36 Wis. 2d 497, 153 N. W. 2d 552; *Borden Co. v. Industrial Comm.* (1958), 2 Wis. 2d 619, 87 N. W. 2d 261.

The findings of the commission in the instant case are unclear with respect to whether or not Lager had in fact commenced a business trip that evening. The sole statement in the findings was, "that *if* the deceased had intended to sell a car that evening, he had abandoned that intention and elected to spend it socially." (Emphasis supplied.)

We are unable to determine whether the department concluded on the facts that there was no evidence of a credible and probative nature to show that Lager had started on his employment or whether, having so found, it concluded that he was killed during a deviation from his business trip and while in the pursuit of his own social purposes.

There is evidence upon which the department could find, however, that Lager commenced a business trip. He twice expressed an intention to go to the Earl-Springbrook area to sell a car on the evening in question. There was evidence that he drove the very car that he said he intended to sell even though there was testimony that a different automobile was available for his personal use. Additionally, the employer stated he was permitted to use an automobile only in the course of his business. There was evidence that the route he pursued was the direct route to the area to which he declared his intention of going. There is no direct evidence to controvert a finding (were one made) that he had not in fact gone to the Earl-Springbrook area in an attempt to sell the car prior to his arrival at the tavern. There was evidence that there was ample time for him to have gone to the Earl-Springbrook area prior to 7:30 p. m.

It is impossible from the record and from the findings and conclusions of the department to know whether any

or all of these facts were considered or ignored. Particularly, the record fails to reveal whether the two statements made by deceased that he was intending to go to sell a car that evening were received into evidence and considered by the department. The employer and insurance company strenuously argue on this appeal, as well as in earlier briefs, that the statements of Lager late in the afternoon and early evening of April 4, 1968, were inadmissible as hearsay, claiming they were merely self-serving declarations. We conclude that these statements, although hearsay, were properly admissible and that, as presented in this record, were exceptions to the hearsay rule. McCormick, *Evidence*, correctly points out, we believe, that declarations of intention are admissible and probative, not only as to intent, but as evidence that the intent was carried out by acts of the person who uttered them.

"Counsel and courts have not until recent decades recognized as widely the probative value and the theory of admissibility of these declarations of intention and design to show conduct, as in the case of the well established practice of receiving similar declarations to show intent or some other mental state which is itself in issue. Nevertheless, the modern cases and texts leave no room to doubt the statement that the accepted principle today is that evidence of declarations of a plan, design or intention presently entertained by the declarant is, subject to the usual limitations as to remoteness in time and apparent sincerity common to all declarations of mental state, admissible when offered as evidence that the design was carried out by acts or omissions of the declarant." McCormick, *Evidence* (hornbook series), p. 572, sec. 270.

We should also point out that sec. 227.10, Stats., provides that, "In contested cases: (1) Agencies shall not be bound by common law or statutory rules of evidence. . . ." We need not, however, in the instant case resort to this statutory admonition, because we are satisfied that the hearsay evidence herein—the recounting of

the deceased's statements of intent—is admissible under common-law rules of evidence. We do not, in finding the instant declarations of intent admissible, recede from our previously expressed statements in regard to ordinary hearsay evidence not subject to a recognized exception. *Outagamie County v. Brooklyn* (1962), 18 Wis. 2d 303, 118 N. W. 2d 201.

It is impossible to tell from the department's findings whether consideration was ever given to these highly probative statements, which, when coupled with the undisputed fact that Lager set out in the Ford automobile in the direction of the Earl-Springbrook area, provide a strong inference, upon which it could be found as a matter of fact, that the deceased entered upon a trip that was in the course of his employment. This, of course, is an inference that the department need not reach but could reach.

There was the countervailing inference that could be drawn from the fact that the record contains no evidence that the deceased ever went to the Earl-Springbrook area.

It is clear, as a matter of law, that, in the event a salesman commences travel in the course of his employment and subsequently deviates from that employment but later resumes his route which he would have to follow in the pursuance of his employer's business, the deviation has ceased and he is performing services incidental to and growing out of his employment.

If it was the department's intention to say, as a matter of fact, that Lager commenced on his course of employment, the claim is not defeated even though there were a substantial deviation before he resumed his usual homeward path.

We see no evidence of record that the department based its conclusion upon the inference that Lager had never commenced his course of employment that night; and in the absence of a finding that the employment

had not commenced, the accident and subsequent death was compensable.

For the reasons set forth herein, we conclude that it is impossible to determine the basis on which the department reached its conclusion. Accordingly, the record must be returned to the department for further proceedings and the making of findings that make it clear that either the department concludes that the employee never commenced his course of employment or, in the alternative and in accordance with its statutory powers, to make further findings that the decedent was in the course of his employment at the time of the fatal accident.

*By the Court.*—Judgment reversed and the record is remanded to the circuit court for transmission to the Department of Industry, Labor & Human Relations for further proceedings not inconsistent with this opinion.