HERITAGE MUTUAL INSURANCE COMPANY and Larsen
Laboratories, Inc., Plaintiffs-Appellants-Petitioners

v.

William E. LARSEN and Labor and Industry Review
Commission, Defendants-Respondents.

Supreme Court

No. 98–3577. *Oral argument January 31, 2001.—Decided
April 4, 2001.*

2001 WI 30

(Also reported in 624 N.W.2d 129.)

For the plaintiffs-appellants-petitioners there were briefs by *Richard T. Mueller, John C. Possi* and *Mueller, Goss & Possi, S.C.*, Milwaukee, and oral argument by *Richard T. Mueller*.

For the defendant-respondent, William E. Larsen, there was a brief by *Robert T. Ward* and *Ward Law Firm*, Waukesha, and oral argument by *Robert T. Ward*.

For the defendant-respondent, Labor and Industry Review Commission, the cause was argued by *Stephen M. Sobota*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE. This is a review of an unpublished decision of the court of appeals.[1] The court of appeals affirmed an order of the Circuit Court for Milwaukee County, Michael Malmstadt, Judge. The circuit court affirmed

---

[1] *Heritage Mut. Ins. Co. v. Larsen*, No. 98–3577, unpublished slip op. (Wis. Ct. App. March 14, 2000) (per curiam).

in part and reversed in part a decision of the Labor and Industry Review Commission (the Commission) awarding worker's compensation benefits to William E. Larsen for the partial amputation of his fingers and thumb, which were injured by frostbite.

¶ 2. The circuit court affirmed the Commission's decision to award worker's compensation benefits but reversed the Commission's decision regarding the 15% reduction of compensation. The court of appeals affirmed the order of the circuit court. Heritage Mutual Insurance Company seeks review in this court. We affirm both aspects of the Commission's decision.

¶ 3. On a cold winter day in 1996, Larsen was traveling to his northern Wisconsin mobile home, which doubled as a sales office. He stopped on the way at a tavern and consumed several drinks after he had taken two diet pills. Larsen later passed out trying to enter the mobile home, spent the night exposed to the below-zero temperatures, and suffered frostbite. The employer and its insurance company (hereafter referred to together as Heritage Mutual) argue that they should not be liable in any way for the employee's injury.

¶ 4. The Commission, however, concluded that Larsen was entitled to compensation under Wis. Stat. § 102.03(1)(f) (1997–98)[2] of the worker's compensation

---

[2] Wisconsin Stat. § 102.03(1)(f) (1997–98) provides as follows:

> Every employe whose employment requires the employe to travel shall be deemed to be performing service growing out of and incidental to the employe's employment at all times while on a trip, except when engaged in a deviation for a private or personal purpose. Acts reasonably necessary for living or incidental thereto shall not be regarded as such a deviation. Any accident or disease arising out of a hazard of such service shall be deemed to arise out of the employe's employment.

law as a traveling employee of Larsen Laboratories, Inc., because he was performing acts "reasonably necessary for living or incidental thereto" at the time of his injury. The Commission further concluded that the award should be reduced by 15% under Wis. Stat. § 102.58 because Larsen's injury resulted from intoxication.

¶ 5. The present case must be viewed in the context of the worker's compensation law. The worker's compensation law strikes a balance between the competing interests of employers and employees. Although employers are liable for more injuries under worker's compensation law than under fault-based tort law, the amount of compensation employers must pay to injured employees is limited under worker's compensation, and employers are immune from employee tort actions. In return for recovering for injury even when they are at fault, employees are awarded less money than they would recover in fault-based tort actions, and employees give up the right to bring tort actions against their employers.[3] "Worker's compensation laws are basically economic regulations by which the legislature, as a matter of public policy, has balanced competing societal interests."[4]

¶ 6. Under Wisconsin worker's compensation law, employers are liable for work-related injuries that befall their employees, even if an employee is intoxicated. Nearly sixty years ago the court recognized that "[t]he wisdom of a policy which permits drunken

---

All subsequent references to the Wisconsin Statutes are to the 1997–98 version unless otherwise indicated.

[3] *See Bauernfeind v. Zell*, 190 Wis. 2d 701, 713, 528 N.W.2d 1 (1995).

[4] *Mulder v. Acme-Cleveland Corp.*, 95 Wis. 2d 173, 180, 290 N.W.2d 276 (1980).

employees to recover even a diminished compensation, where the intoxication causes injury, may be arguable as an original proposition, but after all, this is a matter in which the legislative intention is clear and the legislative power is plenary."[5] Therefore, under Wisconsin worker's compensation law, "[i]ntoxication does not defeat a workmen's compensation claim but only decreases the benefits."[6]

¶ 7. Furthermore, the legislature has authorized a state agency, the Labor and Industry Review Commission, to decide disputes between employers and employees relating to worker's compensation, and the legislature and our case law have limited judicial review of the Commission's decisions.

¶ 8. We conclude that the record contains substantial and credible evidence to support the Commission's findings of fact in this case. We further conclude that the Commission's application of the law to this fact situation must be affirmed as a reasonable interpretation, even if this court might have decided the case differently.

¶ 9. Accordingly, we affirm that part of the order of the circuit court and that part of the decision of the court of appeals awarding Larsen benefits under Wis. Stat. § 102.03(1)(f) as a traveling employee who was performing acts reasonably necessary for living or incidental thereto at the time of injury. We reverse that part of the order of the circuit court and that part of the decision of the court of appeals denying the 15% reduction ordered by the Commission under Wis. Stat.

---

[5] *Nutrine Candy Co. v. Indus. Comm'n*, 243 Wis. 52, 55–56, 9 N.W.2d 94 (1943).

[6] *Dibble v. ILHR Dep't*, 40 Wis. 2d 341, 350, 161 N.W.2d 913 (1968).

§ 102.58 because Larsen's injury resulted from intoxication.

¶ 10. The Commission determined the following facts upon which it based its decision about awarding worker's compensation to Larsen.

¶ 11. William E. Larsen worked in various capacities for Larsen Laboratories, Inc., a metals testing and analysis business owned by Larsen and his wife. One of Larsen's functions within the business was sales, including phone calls and personal visits to potential customers.

¶ 12. At approximately 12:30 p.m. on January 31, 1996, Larsen left the company's office in Oak Creek, Wisconsin, to make the 150-mile drive to Tigerton, Wisconsin, where he and his wife owned a mobile home that they sometimes used as a sales office. Larsen intended to spend the night in the mobile home, do company paperwork there, and then make a sales call to a former customer the next day.

¶ 13. Upon arriving in Tigerton at about 3:30 p.m., Larsen stopped to buy liquor, groceries, and feed corn for deer. He then proceeded to the local tavern. He admitted having four to five mixed drinks there, over a period of approximately one hour and forty-five minutes. The alcoholic beverages were in addition to a couple of Dexatrim diet pills Larsen had taken earlier that day. After leaving the tavern, Larsen drove to his mobile home at approximately 6 p.m., intending to prepare dinner and work on sales matters.

¶ 14. However, Larsen had difficulty opening the door to the mobile home, which was blocked by snow, and also had trouble getting his key to work. He felt dizzy and suffered from a slight headache. He broke a

plastic window in the door, reached through the hole to open the door from the inside, and then lost consciousness. When he woke up the next morning at about 8:45 a.m., he was on the floor inside the trailer with the door open. The outside temperature had been 25 below zero when Larsen reached the home, and Larsen suffered severe frostbite, resulting in the amputation of the fingers and thumb of both hands.

¶ 15. The Commission concluded that Larsen's purpose in going to Tigerton was business-related and that Larsen was a traveling employee pursuant to Wis. Stat. § 102.03(1)(f). The Commission further determined that Larsen was injured while performing acts reasonably necessary for living or incidental thereto and was not engaged in a deviation for a private or a personal purpose at the time of injury. According to the Commission, at the time of injury, Larsen was simply attempting to enter his domicile for the night, an act reasonably necessary for living.

¶ 16. In reaching this conclusion, the Commission applied the "positional risk doctrine." The positional risk doctrine is a body of law that is used to determine whether an accident causing injury arose out of employment under Wis. Stat. § 102.03(1)(f). Under the positional risk doctrine an injury is compensable if the injury would not have happened except that the employment put the claimant in the position where he was injured, that is, the employment put the employee in a zone of special danger.[7]

¶ 17. According to the Commission, the zone of special danger to which Larsen was exposed in the

[7] *See, e.g., Weiss v. City of Milw.*, 208 Wis. 2d 95, 107, 559 N.W.2d 588 (1997); *Goranson v. ILHR Dep't*, 94 Wis. 2d 537, 555–57, 289 N.W.2d 270 (1980); *Nash-Kelvinator Corp. v. Indus. Comm'n*, 266 Wis. 81, 86, 62 N.W. 2d 567 (1954).

present case was the extremely cold weather in Tigerton, and it was by reason of an employment activity (sheltering himself for the night while a traveling employee) that Larsen was exposed to this special danger.

¶ 18. The determinative fact, the Commission wrote, was that Larsen was performing acts reasonably necessary to living when his injury occurred. Even if the trip to the tavern was a deviation, wrote the Commission, the deviation ceased when Larsen returned to the home; at the time of injury he was entering his home, an act reasonably necessary for living. Thus the Commission concluded that Larsen was entitled to compensation, reasoning as follows:

> Even were it to be found that the applicant had deviated from acts reasonably necessary for living by going to the tavern, a finding which the commission does not make, it would have to be found that the deviation had ceased by the time the applicant arrived at the trailer.

¶ 19. The Commission inferred that Larsen's intoxication was a substantial factor in causing the frostbite "because it was probable that he remained asleep for such an extended period due in part to his intoxication." Therefore the Commission reduced the worker's compensation award by 15%.

## II

¶ 20. The first issue in this case is what standard of review this court should apply in reviewing the Commission's decision under Wis. Stat. § 102.03(1)(f).

¶ 21. The Commission's determination presents a mixed question of fact and law. Thus two standards of review come into play.

¶ 22. The Commission's determinations regarding the historical facts relating to Larsen's conduct and Larsen's purpose in traveling to Tigerton are findings of fact.

¶ 23. The Commission's determination of whether Larsen was performing service growing out of and incidental to the employee's employment or was engaging in a deviation for a private or personal purpose raises questions of law. Another question of law is whether the accident arose out of a hazard of such service.

¶ 24. Judicial review of the Commission's findings of fact is significantly limited by statute. First, the legislature has decreed that a court may not set aside an order or award unless "the findings of fact by the commission do not support the order or award."[8] Second, the statutes provide that findings of fact made by the Commission acting within its powers shall, in the

---

[8] Wisconsin Stat. § 102.23(1)(e) provides as follows:

Upon such hearing, the court may confirm or set aside such order or award; and any judgment which may theretofore have been rendered thereon; but the same shall be set aside only upon the following grounds:

1. That the commission acted without or in excess of its powers.

2. That the order or award was procured by fraud.

3. That the findings of fact by the commission do not support the order or award.

The only ground relevant in the present case for setting aside the Commission's award is § 102.23(1)(e)3.

absence of fraud, be conclusive.[9] Third, the statute instructs that a court shall not substitute its judgment for that of the Commission as to the weight or credibility of the evidence on any finding of fact. A court may set aside the Commission's order or award if the order or award depends on any material and controverted finding of fact that is not supported by credible and substantial evidence.[10] The Commission's findings must be upheld even though they may be contrary to the great weight and clear preponderance of the evidence.[11]

¶ 25. The question of whether Larsen was performing service growing out of and incidental to the employee's employment, whether he was engaged in a deviation for a private and personal purpose, and whether the accident arose out of a hazard of such service involves an interpretation of Wis. Stat. § 102.03(1)(f) and an application of the statute to the

---

[9] Wisconsin Stat. § 102.23(1)(a) provides, inter alia:

The findings of fact made by the commission acting within its powers shall, in the absence of fraud, be conclusive. The order or award granting or denying compensation, either interlocutory or final, whether judgment has been rendered on it or not, is subject to review only as provided in this section and not under ch. 227 or s. 801.02.

[10] Wisconsin Stat. § 102.23(6) provides:

If the commission's order or award depends on any fact found by the commission, the court shall not substitute its judgment for that of the commission as to the weight or credibility of the evidence on any finding of fact. The court may, however, set aside the commission's order or award and remand the case to the commission if the commission's order or award depends on any material and controverted finding of fact that is not supported by credible and substantial evidence.

[11] Goranson, 94 Wis. 2d at 554.

facts in the present case. Interpretation and application of statutes are questions of law.[12] The court has recognized, however, that when the legislature has vested a state agency with the administration of a statute, the agency's decision, although not controlling, is entitled to deference.[13] We have previously stated that great weight deference is appropriate in the following circumstances:

(1) the agency is charged by the legislature with administering the statute;

(2) the interpretation of the agency is one of long standing;

(3) the agency employed its expertise or specialized knowledge in forming the interpretation; and

(4) the agency's interpretation will provide uniformity in the application of the statute.[14]

---

[12] *Wisconsin Elec. Power Co. v. LIRC*, 226 Wis. 2d 778, 787, 595 N.W.2d 23 (1999); *CBS, Inc. v. LIRC*, 219 Wis. 2d 564, 572, 579 N.W.2d 668 (1998).

Earlier cases indicated that the application of the statute to the facts was a question of fact and that the Commission's decision would be upheld if it was supported by credible and substantial evidence. *See, e.g., Hunter v. ILHR Dep't*, 64 Wis. 2d 97, 102, 218 N.W.2d 314 (1974). In all of the cases, however, the court repeatedly stated that it would not set aside a Commission's decision unless the decision was unreasonable.

[13] This court reviews the Commission's determination independently of the court of appeals or circuit court, benefiting from their analysis. *West Bend Co. v. LIRC*, 149 Wis. 2d 110, 117, 438 N.W.2d 823 (1989).

[14] *CBS, Inc.*, 219 Wis. 2d at 572.

¶ 26. All these circumstances exist in the present case. The Commission is charged by the legislature with administering the worker's compensation law, the Commission's interpretation of the traveling employee statute is of long standing, the Commission employed its expertise in its interpretation of the statute, and the Commission's interpretation of the traveling employee statute provides uniformity in the application of the traveling employee statute.[15] Under these circumstances the court will give the Commission's application of the statute to the facts in this case great weight deference.

¶ 27. Under the great weight deference standard of review, a court will uphold the Commission's interpretation and application of the statute to the facts found unless the interpretation is unreasonable.[16] An unreasonable interpretation of a statute is one that directly contravenes the words of the statute, is clearly contrary to legislative intent, or is otherwise without rational basis.[17]

¶ 28. Heritage Mutual asks this court to reconsider the appropriate standard of review and asks the court to subject the Commission to stricter judicial review. We cannot do so. Section 102.23 of the statutes governing judicial review represents a considered legislative judgment that the Commission is the appropriate institution to make findings of fact, so long as credible and substantial evidence exists. In keeping

[15] *CBS, Inc.*, 219 Wis. 2d at 572–73.

[16] *Wisconsin Elec. Power Co.*, 226 Wis. 2d at 787; *CBS, Inc.*, 219 Wis. 2d at 572–73.

[17] *CBS, Inc.*, 219 Wis. 2d at 573.

with Wis. Stat. § 102.23, we have concluded that in cases such as the one before us, the Commission's interpretation and application of Wis. Stat. § 102.03(1)(f) will be given great weight deference and will be upheld so long as the Commission's decision is reasonable. The legislative purpose in restricting judicial review in worker's compensation is to discourage litigation so as to attain speedy justice for the employee.[18] This court's standard of review is governed by this legislative purpose.

## III

¶ 29. Heritage Mutual disputes the Commission's findings of fact that Larsen's purpose in traveling to Tigerton was to engage in a business trip for his employer. In its brief to this court, Heritage Mutual refers to evidence that Larsen had a non-business purpose for traveling to Tigerton. There is, however, competing evidence from which the Commission found that Larsen's purpose was to transact business.

¶ 30. The Commission's finding of fact that Larsen's purpose was to engage in a business trip and that he was a traveling employee is supported by credible and substantial evidence.[19] Heritage Mutual is asking this court to substitute its judgment for that of the Commission as to the weight or credibility of the evidence on a finding of fact. We are prohibited by statute from doing so.

[18] *Goranson*, 94 Wis. 2d at 553; *Consolidated Papers, Inc. v. ILHR Dep't*, 76 Wis. 2d 210, 216, 251 N.W.2d 69 (1977); *R.T. Madden v. ILHR Dep't*, 43 Wis. 2d 528, 536, 169 N.W.2d 73 (1969).

[19] *CBS, Inc.*, 219 Wis. 2d at 568 n.4.

¶ 31. In reviewing the Commission's legal conclusion that Larsen was entitled to worker's compensation, we examine Wis. Stat. § 102.03(1)(f). Section 102.03(1)(f) provides that every traveling employee is covered for worker's compensation purposes at all times while on a trip, including all acts reasonably necessary for living or incidental thereto, except when engaged in a deviation for a private or personal purpose. The statute reads as follows:

> 102.03 (1) Liability under this chapter shall exist against an employer only where the following conditions occur:
>
> . . .
>
> (c) Where, at the time of the injury, the employe is performing service growing out of and incidental to his or her employment.
>
> . . .
>
> (e) Where the accident or disease causing injury arises out of the employe's employment.
>
> (f) Every employe whose employment requires the employe to travel shall be deemed to be performing service growing out of and incidental to the employe's employment at all times while on a trip, except when engaged in a deviation for a private or personal purpose. Acts reasonably necessary for living or incidental thereto shall not be regarded as such a deviation. Any accident or disease arising out of a hazard of such service shall be deemed to arise out of the employe's employment.

¶ 32. The purpose of Wis. Stat. § 102.03(1)(f) is to give traveling employees broader protection when their

employment causes them to be away from home.[20] As this court has often noted, after the court had denied compensation for injuries arising from normal living activities of traveling employees, the legislature enacted the traveling employee provision in order to expand protections for traveling employees.[21] The statute must be liberally construed to afford coverage for all services that can be reasonably said to come within it.[22]

■

¶ 33. The statute creates a presumption that a traveling employee is performing services incidental to employment at all times during the business trip.[23] In order to rebut the statutory presumption, the employer must show both that the employee deviated from the business trip and that the deviation was for a private or personal purpose that was not reasonably necessary for living or incidental thereto.[24]

¶ 34. The Commission concluded that even if Larsen's trip to the tavern was a deviation from the business trip for a personal purpose, the deviation ceased by the time he arrived at the mobile home. The extreme cold weather in Tigerton was a zone of special danger to which Larsen was exposed by reason of an employment activity, according to the Commission.

[20] *Wisconsin Elec. Power Co.*, 226 Wis. 2d at 788; *CBS, Inc.*, 219 Wis. 2d at 579.

[21] *Wisconsin Elec. Power Co.*, 226 Wis. 2d at 788; *Hansen v. Indus. Comm'n*, 258 Wis. 623, 628, 46 N.W.2d 754 (1951).

[22] *Wisconsin Elec. Power Co.*, 226 Wis. 2d at 792; *CBS, Inc.*, 219 Wis. 2d at 579.

[23] *Wisconsin Elec. Power Co.*, 226 Wis. 2d at 788–89; *CBS, Inc.*, 219 Wis. 2d at 578–79.

[24] *Wisconsin Elec. Power Co.*, 226 Wis. 2d at 789–90.

¶ 35. Applying the great weight deference standard, the question for this court is whether the Commission's application of the statute to the facts in the present case is reasonable.

¶ 36. The law is clear that an employee is not covered under the worker's compensation law if injured during a deviation. The law is equally clear that an employee who has deviated will be covered under the worker's compensation law once the employee resumes activities that are reasonably necessary to living. In *Lager v. ILHR Department*, 50 Wis. 2d 651, 661, 185 N.W.2d 300 (1971), this court expressed this position as follows:

> It is clear, as a matter of law, that, in the event a salesman commences travel in the course of his employment and subsequently deviates from that employment but later resumes his route which he would have to follow in the pursuance of his employer's business, the deviation has ceased and he is performing services incidental to and growing out of his employment.[25]

¶ 37. Whether Larsen's multiple drinks at the local tavern are a deviation for purely personal purposes not reasonably necessary to living or incidental thereto is irrelevant in this case because Larsen, unlike the claimant-employees denied benefits in other worker's compensation cases involving intoxication, was not injured while at the tavern or while on the road coming from or going to the tavern. In contrast, Larsen was injured at his mobile home, when he struggled in the cold to open the door and lost consciousness.

[25] *See also Olson v. Indus. Comm'n*, 273 Wis. 272, 275–76, 77 N.W.2d 410 (1956); *Nutrine Candy Co.*, 243 Wis. at 56.

¶ 38. The Commission concluded that by the time Larsen was attempting to enter his mobile home, he was engaged in an act that was reasonably necessary to living or incidental thereto. The deviation, if any, had concluded, wrote the Commission, and Larsen had resumed the route that he would have to follow in the pursuit of his employer's business.

¶ 39. Granting the Commission's decision the great weight deference due it, we affirm the decision as did the circuit court and court of appeals. It is reasonable. The Commission's decision does not directly contravene the words of the statute. It is not clearly contrary to legislative intent. It represents a rational conclusion based upon factual findings supported by credible and substantial evidence. The Commission's decision is consistent with the legislative intent to give traveling employees broader protection when working away from home.[26]

¶ 40. Heritage Mutual seems to argue that Larsen's stop at the tavern and his resulting intoxication were such that the deviation continued even upon Larsen's return to his mobile home, his business site while traveling. Heritage Mutual urges this court to reverse the Commission's conclusion by imposing an outer limit on an employee's ability to resume his employment following a substantial deviation. It refers this court to a decision of the Michigan supreme court, in which that court stated that the right to coverage is not a "blank check" that the deviating employee may "cash" at any time no matter how extensive the deviation. Under the reasoning of the Michigan supreme court, a

---

[26] *CBS, Inc.*, 219 Wis. 2d at 579.

significant deviation may break the employment nexus.[27]

¶ 41. In applying worker's compensation statutes, this court has declined to set forth a bright-line rule regarding when a deviation will break the employment nexus. *See Van Roy v. Industrial Comm'n,* 5 Wis. 2d 416, 425–26, 92 N.W.2d 818 (1958). Rather than adopt a bright-line rule barring recovery based on the time or distance of the deviation, this court concluded that variations in the nature and setting of employment call for a case-by-case inquiry. *Id.* at 425–26.

¶ 42. In the present case, the Commission concluded that, if a deviation had occurred, the business trip resumed when Larsen was at the home; therefore, no break in the nexus of employment occurred. This decision is reasonable.

¶ 43. Finally, Heritage Mutual argues that even if Larsen was engaged in an employment activity at the time of his injury, his injury was caused by factors that were purely personal to him. Thus Heritage Mutual is arguing that the accident did not arise out of a hazard of his service under Wis. Stat. § 102.03(1)(f). Heritage Mutual urges this court to reverse the Commission's determination based on the evidence of Larsen's intoxication. We conclude, however, that the Commission acted reasonably in light of the legislative determination that intoxication reduces, but does not necessarily eliminate, an employee's recovery. Wis. Stat. § 102.58.

---

[27] *See Bush v. Parmenter, Forsythe, Rude & Dethmers,* 320 N.W.2d 858, 865 (Mich. 1982).

¶ 44. In Wisconsin, unlike several other states,[28] intoxication does not bar a worker's compensation award. Instead, the legislature has instructed the Commission to reduce a worker's compensation award by 15% if the injury resulted from intoxication.[29] Section 102.58 represents the legislature's judgment regarding the extent to which an employee's intoxication should affect recovery under worker's compensation.

¶ 45. Evidence of intoxication is relevant to the determination of whether the employee was engaged in a deviation at the time of injury. The Commission may, however, determine that an employee, although intoxicated, was not engaged in a deviation at the time of injury. "This court has pointedly refrained from ruling

---

[28] See, e.g., Tenn. Code Ann. § 50—6—110(a) (2000) (denying compensation where injury is due to intoxication); Ohio Rev. Code Ann. § 4123.54 (Anderson 2000) (denying compensation where injury resulted from intoxication); Ind. Code Ann. § 22–3–2–8 (Michie 2000) (denying compensation when injury is due to intoxication).

See also Idaho Code § 72–208 (Michie 2000) (denying income benefits where "intoxication is a reasonable and substantial cause of an injury"). Like Wisconsin, Idaho used to require only a percentage reduction in benefits for injuries caused by intoxication. See Hatley v. Lewiston Grain Growers, Inc., 552 P.2d 482 (Idaho 1976) (applying a 50% reduction in accordance with prior Idaho statute).

[29] Wisconsin Stat. § 102.58, Decreased compensation, provides:

> If injury. . .results from the intoxication of the employe by alcohol beverages, as defined in s. 125.02 (1),. . .the compensation and death benefit provided in this chapter shall be reduced 15% but the total reduction may not exceed $15,000.

as a matter of law that intoxication is synonymous with personal deviation. . . .[I]ntoxication, while indicative of intent to deviate, does not per se defeat a claim but only decreases benefits."[30] That Larsen was a traveling employee under Wis. Stat. § 102.03(1)(f) does not change the effect of Wis. Stat. § 102.58. To conclude otherwise would give traveling employees less protection than other employees. Such a result is contrary to the legislature's intent to give employees broader protection when their employment causes them to be away from home.[31]

¶ 46. Heritage Mutual further relies on *Goranson v. ILHR*, 94 Wis. 2d 537, 289 N.W.2d 270 (1980), in which the court upheld the Commission's denial of coverage to a traveling employee who, while in a hotel room with a woman who was not his spouse, climbed out of the window of his third-floor room and jumped from the ledge. The *Goranson* court concluded that there was credible evidence to support the Commission's determination that the employee's injury did not arise out of a zone of special danger created by the fact that his employment required him to be at the hotel, but rather out of forces that were purely personal to the employee.

¶ 47. Heritage Mutual attempts to draw an analogy from *Goranson* to the present case, arguing that Larsen's injury did not arise out of the cold weather, which is the zone of special danger created by his employment, but rather out of Larsen's own intoxication, a force that was purely personal to him.

---

[30] *City of Phillips v. ILHR Dep't*, 56 Wis. 2d 569, 579, 202 N.W.2d 249 (1972).

[31] *See Wisconsin Electric Power Co.*, 226 Wis. 2d at 788; *CBS, Inc.*, 219 Wis. 2d at 579.

¶ 48. However, *Goranson* does not stand for the proposition that an employee is barred from recovery when a purely personal force contributes to an injury. Indeed, the court in *Goranson* made clear that an injury is noncompensable if the Commission concludes that the injury was caused by purely personal forces, so that employment contributes nothing to the injury. *See Goranson*, 94 Wis. 2d at 556–57.

¶ 49. We addressed the limits of the *Goranson* holding in *Weiss v. City of Milwaukee*, 208 Wis. 2d 95, 559 N.W.2d 588 (1997), when we concluded that an employee was entitled to worker's compensation when the employer disclosed personal information to the employee's assaultive ex-husband. The disclosed information contributed to the employee's injury. Even though the animus of the ex-husband was a factor purely personal to the employee, the employee was covered.

¶ 50. We conclude that *Goranson* does not require us to set aside the Commission's award in the present case. In this case, as in *Goranson*, we are reviewing the Commission's decision for reasonableness. Just as we concluded that the Commission's determination in *Goranson* was reasonable, so too do we conclude that the Commission's decision in the present case is reasonable.

¶ 51. The Commission concluded in the present case that Larsen's frostbite arose out of the zone of special danger created by his employment, the cold weather, and Larsen's difficulties in opening the door of his mobile home. The Commission could conclude that these are factors that are not purely personal to Larsen, but rather that they arose out of his employment. Moreover, the Commission was mindful of the

legislative determination that intoxication reduces, but does not necessarily eliminate, an employee's recovery. Wis. Stat. § 102.58.

¶ 52. In affirming the Commission's decision in this case, the court recognizes that this is a close case. The Commission might have ruled the other way. In close, borderline cases like the present one, the Commission may very well rule in favor of the claimant, "principally because it was the intent and purpose of the act to bring border-line cases under it and to close up avenues of escape which would naturally be suggested to those seeking to evade liability under the act."[32]

¶ 53. The Commission's conclusion is within the range of reasonableness, even as Heritage Mutual characterizes the determination as pushing, or even breaking, the envelope. Perhaps this court might have reached a different conclusion under the facts of the case if the legislature had authorized this court to review Commission decisions de novo. Nevertheless, under the great weight deference standard of review, a reviewing court may not second-guess a reasonable interpretation of a statute by a state agency.

¶ 54. For the reasons set forth we conclude that the Commission's determination is reasonable and must be affirmed by this court.

---

[32] *Tesch v. Indus. Comm'n,* 200 Wis. 616, 627, 229 N.W. 194 (1930). *See also Wisconsin Elec. Power Co.,* 226 Wis. 2d at 796; *CBS, Inc.,* 219 Wis. 2d at 581 (quoting *City of Phillips,* 56 Wis. 2d at 579–80).

¶ 55. The final issue in the present case is whether the Commission properly determined that Larsen's injury resulted from his intoxication, triggering a 15% reduction in his benefits under Wis. Stat. § 102.58. Section 102.58, entitled decreased compensation, provides:

> If injury is caused by the failure of the employe to use safety devices which are provided in accordance with any statute or lawful order of the department and are adequately maintained, and the use of which is reasonably enforced by the employer, or if injury results from the employe's failure to obey any reasonable rule adopted and reasonably enforced by the employer for the safety of the employe and of which the employe has notice, *or if injury results from the intoxication of the employe by alcohol beverages, as defined in s. 125.02 (1)*, or use of a controlled substance, as defined in s. 961.01 (4), or a controlled substance analog, as defined in s. 961.01 (4m), *the compensation and death benefit provided in this chapter shall be reduced 15% but the total reduction may not exceed $15,000* (emphasis added).

¶ 56. The questions of whether Larsen was intoxicated and whether his injury resulted from intoxication, so that the compensation is reduced by 15% under Wis. Stat. § 102.58, have been treated in the case law as questions of fact.[33] The Commission's factual findings are conclusive, as we have explained previously, in the absence of fraud, and an order or award may not be set aside unless the findings of fact

---

[33] *See Massachusetts Bonding & Ins. Co. v. Indus. Comm'n,* 8 Wis. 2d 606, 609, 99 N.W.2d 809 (1959).

are not supported by credible and substantial evidence. If the record contains credible and substantial evidence regarding both intoxication and causation, the Commission may draw reasonable inferences from this evidence. *See Olson v. Indus. Comm'n*, 273 Wis. 272, 77 N.W.2d 410 (1956).

¶ 57. The Commission's order stated:

> The commission infers from the applicant's testimony concerning how much he drank at the tavern on January 31, 1996, that he was intoxicated. It additionally infers that this intoxication was a substantial factor in causing the applicant's frostbite injuries, because it is probable that he remained asleep for such an extended period due in part to his intoxication.

¶ 58. The circuit court reversed the Commission's 15% reduction, holding that there was no evidence on the record that a person was more likely to remain asleep if intoxicated. The circuit court further noted that the record contains no evidence linking the length of time Larsen remained asleep to the frostbite.

■

¶ 59. Under Wis. Stat. § 102.58, an employer bears the burden of establishing that an employee was intoxicated at the time of injury and of establishing a causal connection between the intoxication and the injury.[34]

¶ 60. Larsen argues that the circuit court correctly reversed the Commission's 15% reduction because no evidence supports a finding of intoxication

---

[34] *See Haller Beverage Corp. v. ILHR Dep't*, 49 Wis. 2d 233, 237, 181 N.W.2d 418 (1970); *Massachusetts Bonding & Ins. Co.*, 8 Wis. 2d at 608–09.

or a finding that intoxication caused Larsen to remain asleep long enough to suffer frostbite.[35]

¶ 61. We disagree with Larsen, the circuit court, and the court of appeals and uphold the Commission's findings of fact that Larsen was intoxicated and that the injury resulted from intoxication. While we agree with Larsen that there is no direct evidence in the record of intoxication or that intoxication caused Larsen to remain asleep for an extended period, or that Larsen's extended exposure to the cold caused his injury, these inferences may reasonably be drawn from the record.

¶ 62. The renal consultation report of Dr. Matthew Hanna, on February 2, 1996, one day after Larsen's frostbite, stated the following "impressions" regarding patient Larsen: "1. Ethanol abuse; 2. Loss of consciousness secondary to the above. 3. Severe frostbite injury." Dr. Hanna's report is credible and substantial evidence to establish intoxication, a causal link between Larsen's intoxication and his loss of consciousness and the injury.

¶ 63. Larsen suggests that this report is not credible and substantial evidence to support the Commission's findings that intoxication caused the injury. Larsen testified during the Commission hearing that he did not know what caused the injury and denied that any doctor had attributed his injury to intoxication. The Commission, however, could have discounted Larsen's testimony regarding causation. Indeed, the record contains reports from a psychiatrist and a social worker stating that Larsen was in denial regarding the seriousness of his drinking.

---

[35] The Commission has not appealed the circuit court's reversal of this portion of its order.

¶ 64. Again, the Commission might have made different findings of fact on this record. Other factors than intoxication may have caused Larsen to lose consciousness. The record shows Larsen used diet pills and had exerted himself in the cold. No evidence was presented about the effect of alcoholic beverages on sleep patterns or the length of time exposure to cold causes frostbite. Nevertheless, this court need not set aside the Commission's findings of fact. The Commission could draw reasonable inferences from the credible and substantial evidence in the record that Larsen's intoxication caused him to lose consciousness and suffer frostbite as a result of exposure.

¶ 65. Larsen relies on *Haller Beverage Corp. v. ILHR Department*, 49 Wis. 2d 233, 181 N.W.2d 418 (1970), in which an employee with a blood alcohol level of 0.29 percent crashed his car into a bridge abutment. The employer in *Haller* presented evidence that the employee was intoxicated, but the employer failed to present any evidence to establish a causal link between the intoxication and the crash. Instead, the employer relied on the absence of evidence of any alternative cause for the accident. This court upheld the Commission's determination that the employer had not met its burden of proof under Wis. Stat. § 102.58, stating:

> In meeting a burden of proof, absence of testimony is not the same as presence of testimony. It is true that the employer and insurance carrier were not required to negate all possible explanations of the car veering to hit the abutment. But they were required to establish a causal link between the condition of intoxication and the injury. This they did not do.

*Haller*, 49 Wis. 2d at 236 (citation omitted).

¶ 66. *Haller* also drew on *Massachusetts Bonding & Insurance Co. v. Industrial Commission*, 8 Wis. 2d 606, 99 N.W.2d 809 (1959), in which this court upheld the Commission's determination that the employer had failed to show that intoxication had caused an employee to fall down a flight of stairs. The record contained no evidence whatsoever regarding how the accident occurred, so the employer's suggestion that the fall was due to intoxication was mere suspicion.

¶ 67. *Haller* and *Massachusetts Bonding* stand in contrast to *Olson v. Industrial Commission*, 273 Wis. 272, 77 N.W.2d 410 (1956), in which an intoxicated employee's vehicle overturned when the vehicle struck a concrete ditch on the wrong side of the road. In that case, the employee presented evidence of a mechanical defect in the vehicle, while the employer presented physical evidence that the employee had been driving for some distance on the wrong side of the road. This court stated that the Commission could reasonably infer from this evidence that intoxication caused the employee to be driving on the wrong side of the road, which in turn caused the accident. These three cases, taken together, demonstrate the court's deference to the Commission's findings regarding whether intoxication caused an injury under Wis. Stat. § 102.58.

¶ 68. The Commission was entitled to draw the reasonable inference in the present case that intoxication caused Larsen to remain asleep for an extended period and that his injury was caused by his long exposure to the cold.

¶ 69. Accordingly we conclude that there is credible and substantial evidence in the record to support the Commission's determination that the injury

resulted from intoxication and that the 15% award reduction required by Wis. Stat. § 102.58 applies.

¶ 70. Because we conclude that the Commission properly reduced Larsen's award under Wis. Stat. § 102.58, we reverse the portion of the circuit court's order and the decision of the court of appeals denying the 15% reduction. We affirm the portion of the decision of the circuit court and the court of appeals upholding the Commission's determination that Larsen was entitled to coverage under Wis. Stat. § 102.03(1)(f). The Commission's decision is therefore affirmed in its entirety.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part.

¶ 71. N. PATRICK CROOKS, J. *(concurring in part, dissenting in part)*. The majority defers too much to great weight deference. The Labor and Industry Review Commission's determination that William E. Larsen suffered an injury covered by Wis. Stat. § 102.03(1) is neither reasonable nor in accord with the purpose of § 102.03(1).[1] The Commission could not have simultaneously concluded both that there was a compensable injury here and that Larsen's intoxication caused his injuries, where the accident causing the injuries did not arise from Larsen's employment, but from a cause solely personal to him—that is, his intoxi-

---

[1] As noted in the majority opinion (at ¶ 27), even under the great weight deference standard of review, if the Commission's interpretation is unreasonable—that is, the interpretation "directly contravenes the words of the statute, is clearly contrary to legislative intent, or is otherwise. . .without rational basis"—it cannot be upheld. *Wisconsin Elec. Power Co. v. LIRC*, 226 Wis. 2d 778, 787, 595 N.W.2d 23 (1999) (citations omitted).

cation. The Commission's determination thus contravenes the statutory directive that there is coverage only "[w]here the accident. . .causing injury arises out of the employe's employment." Wis. Stat. § 102.03(1)(e).

¶ 72. Wisconsin Stat. § 102.03(1) imposes liability upon an employer for a traveling employee's injury only where the accident that caused the injury arises from the employment relationship.

> In order for liability to accrue, it is necessary both that the employee at the time of the accident be performing services growing out of and incidental to his employment and that the accident causing injury must arise out of his employment. The phrase "arising out of" refers to the causal origin of the injury and the "course of employment" phrase refers to the time, place, and circumstances of the accident in relation to the employment.
>
> The "travelling employee" statute does not modify these two requirements, it merely provides the employee with a statutory presumption in favor of both of these requirements. . . .[E]ven in those cases where the travelling employee presumption applies, the "accident. . .*must arise* out of a hazard of such service. . . ."

*Goranson v. ILHR Dep't*, 94 Wis. 2d 537, 549–50, 289 N.W.2d 270 (1980) (citations, footnotes omitted, emphasis in original).[2] Typically, this · court has

---

[2] It is noteworthy that the Commission did not discuss the traveling employee presumption. Presumably, the Commission concluded that even if the presumption dropped out of consideration because evidence to the contrary had been presented (*see Goranson v. ILHR Dep't*, 94 Wis. 2d 537, 551, 289 N.W.2d 270 (1980)), the Commission's conclusions would have been the same.

addressed the "course of employment" element of liability rather than the causation or the "arising out of the employment" element. *Id.* at 549 n.3. However, this court did address the causation element, which is determinative here, in *Goranson.*

¶ 73. This case is strikingly similar to *Goranson.* Goranson was a bus driver for Whitie's Transportation, which provided a charter bus to a Green Bay Packers football game in Green Bay from Barron, Wisconsin. *Id.* at 542. On the night of the injury for which Goranson sought worker's compensation, he consumed a large amount of alcohol—a couple of drinks upon arrival at the hotel where he and the bus passengers were staying, and four more with a late dinner. *Id.* A witness reported that at about 1:30 a.m., Goranson was in the lobby and had been drinking. *Id.* at 543. At about 2:30 a.m., another witness reported hearing "screaming and cussing" from Goranson's room and saw Goranson, "dazed or drunk, or something," climbing out of a window; then he jumped. *Id.* at 544.

¶ 74. Goranson claimed that he had gone to sleep and awoke to find someone in the room, with whom he scuffled. *Id.* at 542–43. According to Goranson, he was pushed out of the window and was hanging on the ledge until he dropped to the roof of the hotel kitchen. *Id.* at 541, 543. When the police examined his room, they found that other than a tipped over chair and some blood on sheets and pillowcases, there was no sign of a struggle and nothing was missing from the room. *Id.* at 544. There was also no sign of forced entry and Goranson's room had been locked from the inside. *Id.* at 542, 556. Goranson suffered a broken hip and other injuries from jumping from his third floor room. *Id.* at 541.

¶ 75. The Department of Industry, Labor and Human Relations determined that Goranson's injuries

were not compensable.[3] *Id.* at 540. The Department concluded that although Goranson was performing services growing out of and incidental to his employment, Goranson's injuries did not arise out of his employment. *Id.* at 542.

¶ 76. This court agreed. In determining whether the injury arose out of Goranson's employment, the court applied the "positional risk doctrine."

> The definition of the positional risk doctrine can be stated as follows: "[A]ccidents arise out of employment if the conditions or obligations of the employment create a zone of special danger out of which the accident causing the injury arose. Stated another way, an accident arises out of employment when by reason of employment the employee is present at a place where he is injured through the agency of a third person, an outside force, or the conditions of special danger."

*Id.* at 555 (quoting *Cutler-Hammer, Inc. v. Industrial Comm'n*, 5 Wis. 2d 247, 254, 92 N.W.2d 824 (1958)).

¶ 77. This court has, where appropriate, applied the positional risk doctrine to uphold a determination that an employer is liable for a traveling employee's injury. "Such cases include, among others, accidents

---

[3] The Department of Industry, Labor and Human Relations is now known as the Department of Workforce Development. The legislature renamed the Department of Industry, Labor and Human Relations the Department of Industry, Labor and Job Development, effective July 1, 1996. However, the Department was given the option to use the name Department of Workforce Development which it did. The legislature recognized the name change in 1997. *Wisconsin Blue Book 1999–2000* 493 (Wisconsin Legislative Reference Bureau ed., 1999). The Labor and Industry Review Commission now reviews decisions of the Department of Workforce Development. *Id.* at 496.

arising from horseplay, weather conditions, and assaults." *Nash-Kelvinator Corp. v. Industrial Comm'n,* 266 Wis. 81, 86, 62 N.W.2d 567 (1954). Goranson apparently tried to fit into the assault category. However, unlike the applicant in *Nash-Kelvinator,* Goranson was not subjected to mob violence by coworkers. *Id.* at 83. There also was not an assault as there was in *Weiss v. City of Milwaukee,* 208 Wis. 2d 95, 99–100, 559 N.W.2d 588 (1997) where the employer released confidential information about an employee who was subsequently harassed by her ex-husband.

¶ 78. Rather, the court concluded that Goranson's injuries "arose out of a cause solely personal to the employee and did not arise out of the employment. . . ." *Goranson,* 94 Wis. 2d at 556. The court found that credible evidence supported the Department's determination as such.[4] Goranson "voluntarily allowed someone" into his hotel room. *Id.* at 556. And, "for reasons known only to Mr. Goranson he crawled out of the window, stood on the ledge, and jumped." *Id.* In other words, Goranson's actions, and not his employment, created a zone of special danger or hazard out of which his injuries arose. "The situation in which Mr. Goran-

---

[4] At the time that *Goranson* was decided, this court applied a credible evidence standard of review to determinations of whether there was a deviation from employment or whether the injury arose from the employment. *Goranson,* 94 Wis. 2d at 553; *Hansen v. Industrial Comm'n,* 258 Wis. 623, 626, 46 N.W.2d 754 (1951). Now, such determinations are reviewed as questions of law—statutory interpretation—by way of great weight deference. *See CBS, Inc. v. LIRC,* 219 Wis. 2d 564, 584–85, 579 N.W.2d 668 (1998) (Crooks, J., concurring). Accordingly, here, whether Larsen's injuries arose from his employment is considered a question of law.

son found himself was not one which was created by the risk of staying at the hotel." *Id.* at 557.

¶ 79. Similarly, here, the situation in which Larsen found himself was not one created by the risk of staying at his mobile home. The situation Larsen found himself in was created by his own, voluntary actions, namely, his intoxication. Indeed, because of that fact, this case indicates, more strongly than in *Goranson* where the court did not rely upon any finding that Goranson was intoxicated, that the injuries did not arise from the employment relationship.

¶ 80. Here, the Commission failed to apply, reasonably, the positional risk doctrine when it ignored its own finding that Larsen's intoxication caused his injuries. For the positional risk doctrine to be applied correctly, "[a]ll that is required is that the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose." *Butler v. Industrial Comm'n,* 265 Wis. 380, 385, 61 N.W.2d 490 (1953). The Commission initially concluded that sub-zero temperatures created a special zone of danger out of which Larsen's injuries arose. More importantly, the Commission also concluded that Larsen's intoxication caused his injuries, and reduced his compensation correspondingly. *See* majority op. at ¶ 55; *see also* Wis. Stat. § 102.58 (benefits are reduced where there is a causal connection between the intoxication and the injury).[5] It was not the weather that was the special zone of danger or hazard for Larsen. It was his intoxication. But for the fact that he passed out, and that he

---

[5] Wisconsin Stat. § 102.58 provides in pertinent part: "[I]f injury results from the intoxication of the employe by alcohol beverages,. . .the compensation and death benefit provided in this chapter shall be reduced 15% but the total reduction may not exceed $15,000."

89

lost consciousness, while half inside, half outside of his mobile home, the weather would have been of no effect. The accident that caused Larsen's injuries—passing out—did not arise "out of a hazard of such service [of employment]." Wis. Stat. § 102.03(1)(f). Thus, the accident could not "be deemed to arise out of the employe's employment." *Id.*

¶ 81. Rather, here, as in *Goranson*, the cause of Larsen's injuries was solely personal to him. When Larsen arrived in Tigerton, he consumed five to six alcoholic drinks within less than two hours at the Split Rock Tavern. There was no connection between his employment and his drinking. He was not entertaining potential clients. "It cannot be said the intoxicants he ordered were in any way in the furtherance of his employer's business." *Dibble v. ILHR Dep't*, 40 Wis. 2d 341, 350, 161 N.W.2d 913 (1968) (intoxication relevant to issue of personal deviation). As in *Goranson*, Larsen "deliberately acted to place himself in a position where he sustained an injury which was not a risk incidental to his employment relationship. . . ." 94 Wis. 2d at 557. The cold was not, and would not have been, a risk for Larsen, but for his self-induced intoxication.

¶ 82. The Commission admits that Larsen was intoxicated and that that intoxication caused his injuries. But the Commission fails to make the required and necessary connection to find a compensable injury here—that the accident causing the injury was related to Larsen's employment. Here, the accident, losing consciousness or passing out, was not caused by the weather. It was not caused by an outside force or third person. Here, as in *Goranson*, there was no special zone of danger that arose from the employment relationship, but instead a self-created zone of danger, even though the place of the injury was connected to the

requirements of his employment. Simply, there was nothing about his employment that put him in harm's way.

¶ 83. Although it is not necessary to find that the Commission also unreasonably concluded that Larsen had returned to the "course of employment" if he had deviated from his business trip (*see* majority op. at ¶¶ 41–42), there is certainly a basis for such a finding, given the extent of Larsen's deviation. Larsen's deviation—imbibing at least 4 or 5 drinks of Kessler Whiskey and diet Coke without dining—could reasonably be considered as unnecessary for living or not incidental thereto. *Goranson*, 94 Wis. 2d at 550 n.3. As this court indicated in *Dibble v. ILHR Dep't*, 40 Wis. 2d 341, 161 N.W.2d 913 (1968), "[w]hile a cocktail or two before dinner probably is an acceptable social custom incidental to an act reasonably necessary to living, the department could conclude that Dibble's indulgence was beyond reasonableness." *Id.* at 350.

¶ 84. Indeed, Larsen's consumption of at least 4 or 5 alcoholic drinks in less than two hours is more reasonably considered as a break in the employment nexus. *See Bush v. Parmenter, Forsythe, Rude & Dethmers*, 413 Mich. 444, 457, 320 N.W.2d 858 (1982). In *Bush*, the applicant employee had attended a seminar out of town, and, on his way back home, had become intoxicated. *Id.* at 448–49. A restaurant where he had stopped had attempted to have him take a cab home, but he refused. *Id.* at 448. He left, and was murdered shortly thereafter. *Id.* The Michigan Supreme Court vacated the award of worker's compensation benefits, finding that the "nexus between the employment and the injury was dissolved" by the employee's deviation. *Id.* at 460. Similarly here, Larsen's drinking and subsequent intoxication was a deviation from the purpose of

his business trip, so that it dissolved any connection—if any there was—between his employment and his injuries.

¶ 85. Nonetheless, the Commission unreasonably concluded that the accident causing Larsen his injuries arose from his employment. The Commission's conclusion is not only unreasonable, but also directly contravenes the requirement of Wis. Stat. § 102.03(1)(f) that there is coverage only where the accident arises out of a hazard of such service of employment. Accordingly, the Commission determination, even under a great weight deference standard of review, must be overturned. *CBS, Inc. v. LIRC*, 219 Wis. 2d 564, 573, 579 N.W.2d 668 (1998). Certainly the legislature did not intend to provide worker's compensation for those injuries caused by an employee's intoxication where there is no connection whatsoever between the employment relationship and the intoxication.

¶ 86. The conclusion that Larsen is not entitled to worker's compensation benefits because his injury did not arise from his employment, but arose from a self-created zone of danger due to his intoxication, does not ignore Wis. Stat. § 102.58, or, as the majority suggests, undermine the travelling employee protections in § 102.03. The legislature's intent to limit, but not preclude, compensation where the employee's injury results from intoxication presumes that there already is a compensable injury. Where the injury does not arise from the employment, there is no compensable injury. Wis. Stat. § 102.03(1)(e), (f). Here, Larsen's intoxication is not the cause of an otherwise compensable injury, so § 102.58 does not even come into play. Nonetheless, I concur in the majority's conclusion that,

at the very least, the Commission correctly reduced Larsen's award by 15% on account of his intoxication.

¶ 87. For the reasons stated herein, I respectfully dissent to that portion of the majority's opinion that upholds the Commission's decision to award Larsen worker's compensation benefits.

¶ 88. I am authorized to state that Justice JON P. WILCOX and Justice DIANE S. SYKES join in this opinion.