ANDERSON and another, Respondents, vs. INDUSTRIAL COMMISSION and another, Appellants.

*January 22—May 13, 1947.*

For the appellants there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent Employers Mutual Liability Insurance Company there was a brief by *Bloomquist & Iding* of Milwaukee, and oral argument by *J. A. Bloomquist.*

*Paul E. Bornemann* of Milwaukee, for the respondent Anderson.

RECTOR, J. The first question is whether the evidence supports the commission's finding that Whyte was injured while performing services growing out of and incidental to his employment.

It may be conceded that Whyte was not employed for the purpose of greasing the gears. He was not instructed to grease them and, in fact, did so without the employer's knowledge. However, he did so for the purpose of advancing the employer's interests and did not violate any instruction to the contrary. He thought the gears needed greasing, and, as he testified, he tried to make himself generally helpful in the crushing operations.

A proper consideration of the purposes of the compensation law requires the conclusion that Whyte's injury grew out of and was incidental to his employment. The law must be liberally construed in favor of including all service that can be

reasonably said to come within it. *Severson v. Industrial Comm.* (1936) 221 Wis. 169, 266 N. W. 235. Moreover, it is contrary to the interests of the employer, the employee, and the public generally to deny compensation to an injured employee on the ground that he must refrain from doing work in his employer's interest that he is not specifically authorized to do. Such a construction would reward the slothful and penalize the enterprising employee, and would impair industrial efficiency. *Hartz v. Hartford Faience Co.* (1916) 90 Conn. 539, 97 Atl. 1020.

For the purpose of determining eligibility to primary compensation, one's employment by implication authorizes him to do, in addition to the things for which he is specifically employed, such further work in advancement of his employer's interests as is reasonably necessary at the time and place and which he has not been forbidden to do. *Belle City M. I. Co. v. Rowland* (1919), 170 Wis. 293, 174 N. W. 899; *Conveyors Corporation v. Industrial Comm.* (1930) 200 Wis. 512, 228 N. W. 118; *Ex parte Majestic Coal Co.* (1922) 208 Ala. 86, 93 So. 728.

The second question is whether the employer is liable for treble compensation under the provisions of sec. 102.60 (3), Stats. The commission found that Whyte was "employed, required, suffered, or permitted to work at prohibited employment" for which treble compensation is provided by sec. 102.60 (3). The prohibited employment consisted of working in or about a "mine or quarry" and "oiling or cleaning dangerous or hazardous machinery in motion," contrary to the provisions of sec. 103.69 (3) (m) and (o), respectively.

Whether a gravel pit is a mine or quarry within the provisions of sec. 103.69 (3) (m), Stats., presents a question of law since it requires the interpretation of a statutory provision. It is first necessary to determine the character of work included within the statutory language, and this presents a question of law. Thereafter the question as to whether the work done in

a particular case falls within the provisions of the statute as so construed, involves a determination of fact.

In the construction of statutes all words and phrases shall be construed and understood "according to the common and approved usage of the language" where technical words or words having a peculiar and approved meaning are not involved. Sec. 370.01, Stats.   No question of a technical or peculiar and approved meaning of language is involved in this case.

Webster's New International Dictionary, Second Edition, defines a "quarry" as—

"1. An open excavation, usually for obtaining building stone, slate, or limestone;—sometimes applied also to underground extensions of such surface workings, or even to wholly subterranean excavations for material usually taken from the surface.   In its widest sense, the term *mines* includes *quarries,* and has been sometimes so construed by courts; but when the distinction is drawn, *mine* denotes underground workings and *quarry* denotes superficial.   Open workings for iron ore, clay, etc., are likely to be called *banks* or *pits* rather than quarries."

"Mine" is defined as—

"1. a. A pit or excavation in the earth, from which ores, precious stones, coal, or other mineral substances are taken by digging or by any of various other mining methods; as, a gold *mine;* an asphalt *mine;*—disting. from pits, called *quarries,* from which stone (as for building or for making lime) is taken. . . ."

"Mine" and "quarry" are not synonymous.   As stated by Mr. Webster, the term "mine" in its widest sense includes quarries.   That being true, it is evident that the language "mine or quarry" refers to "mine" in the narrower sense and distinguishes between a mine as an underground excavation and a quarry as a superficial or open excavation.

It does not follow, however, that all open excavations are quarries within the statutory language.   The definition set out above indicates that a quarry is an open excavation usually for

the purpose of obtaining building stone, slate, or limestone. It draws a distinction between such open workings and those for iron ore, clay, etc., which are likely to be called "pits." Bearing in mind that the statute is to be construed according to the common as well as the approved usage of words, we must construe "quarry" according to its usual meaning as an open excavation for obtaining building stone, slate, limestone, and the like. If an open excavation from which clay, ore; etc., are taken is likely to be referred to as a pit rather than a quarry, it would be an uncommon use of the word "quarry" to include such a pit within its meaning. The fact that open excavations from which gravel is taken are commonly designated as pits and are akin to ore pits and clay pits places them in that class and distinguishes them from quarries. Mr. Webster's distinction between "quarries" and "pits" is certainly in accordance with the usual understanding of those words. The average well-informed person would not refer to a gravel pit as a quarry. *Wadhams Oil Co. v. State* (1933), 210 Wis. 448, 245 N. W. 646, 246 N. W. 687.

The fact that the Industrial Commission, under the authority vested in it by ch. 101, Stats., issued a general order using the terms "quarry" and "pit" in a synonymous sense (Order 360—Definitions, General Orders on Quarries and Pits, effective January 4, 1930) is not conclusive in defining the word "quarry" as used in sec. 103.69 (3) (m). While an administrative interpretation by the commission is entitled to considerable weight, it cannot control where, as here, it does not conform to the meaning of the word "quarry" as it is to be gathered from the statutory rule of construction.

The commission's finding that Whyte was employed in violation of sec. 103.69 (3) (o), Stats., presents a mixed question of law and fact. The terms of his employment present a question of fact. Whether under such terms he was employed in the prohibited employment is a question of law. Sec. 102.60 (3) provides treble compensation if the injured employee is a

minor and at the time of the injury is "employed, required, suffered, or permitted to work at prohibited employment." The relevant prohibited employment consists in "oiling or cleaning dangerous or hazardous machinery in motion." Sec. 103.69 (3) (o).

The appellants argue that if Whyte was in the course of his employment in greasing the gears, he necessarily was employed for that purpose. We are unable to agree with the contention. As we have pointed out, for purposes of determining primary compensation an employee is impliedly authorized to do work other than that for which he may be specifically employed. For purposes of treble compensation the statute requires that he shall be employed, required, suffered, or permitted to do the work in which he is engaged. It thus contemplates that the authority to do it shall be fairly inferred from the terms of a specific employment or pursuant to a specific requirement imposed without its terms or that it shall be done with the employer's knowledge and acquiescence. *Rutta v. Industrial Comm.* (1934) 216 Wis. 238, 257 N. W. 15. There is no basis in this case for the finding that the work of greasing the gears is fairly to be inferred from the terms of Whyte's employment, nor that he greased them with his employer's knowledge and consent. He was not instructed to grease them nor was it necessary that he grease them in order to carry out the duties which he was instructed to perform. It was customary for the employer and another employee to grease the gears, and this was known to Whyte. He attempted to grease them on but the one occasion, and no one saw him or knew of his intentions.

*By the Court.*—Judgment affirmed.