NELSON MOTORS, INC., and another, Respondents, vs. INDUSTRIAL COMMISSION and another, Appellants.*

*December 6, 1957—January 7, 1958.*

---

* Motion for rehearing denied, without costs, on February 28, 1958.

For the appellant Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan* and *Beatrice Lampert,* assistant attorneys general, and oral argument by *Mrs. Lampert.*

For the appellant Eunice Bradford there was a brief by *Schubring, Ryan, Petersen & Sutherland,* and oral argument by *James C. Herrick,* all of Madison.

For the respondents there was a brief and oral argument by *Frank L. Morrow* of Eau Claire.

MARTIN, C. J. Nelson Motors is an Oldsmobile agency located in the city of Eau Claire, engaged in the business of selling and servicing new and used automobiles. The deceased, Marvin Bradford, was employed as service manager with the duty of supervising repairs. Nelson Motors encouraged all its employees to bring to their employer's attention

anyone whom they believed would be interested in buying a car, and offered to the employees a flat $10 bonus for any lead which resulted in a sale.

Paul Nelson, owner of the business, testified:

"He [Bradford] was a conscientious type of employee. He of course realized that we were interested in selling cars and he would tell me or one of the salesmen of a deal that he might know about and also if somebody came in for repair on a car and it was rather expensive, he might suggest to them it would be better for them to trade, in which case he again contacted me or one of the boys in the sales organization. He was related to a good number of people in the area and as a result a lot of those people came in and he created several sales as a result of his efforts. He didn't close the deals as we call it but he was largely responsible in the sales being made."

Bradford had his employer's "blanket approval" to take out any of the cars for road tests and demonstrations without requesting permission to do so. On several occasions he had showed automobiles to prospects at night.

A day or two before March 12, 1955, while Bradford's personal car was laid up for repairs, he was given permission by Paul Nelson to use one of the employer's cars while his own was awaiting parts. In the afternoon of March 12th, Garfield Jentlie, used-car sales manager for Nelson Motors, made arrangements with Bradford to have him use a 1950 Oldsmobile and laid out the keys for him.

Victor Krueger testified he met Bradford on the afternoon of March 12th and, going out in Krueger's car, they stopped at two taverns, one of which was owned by Gordon Bloom, an uncle of Mrs. Bradford. While there Bradford talked to Bloom about selling him a car and made an appointment for a demonstration. On the way back to Eau Claire Bradford mentioned to Krueger that his father-in-law wanted to see a certain Oldsmobile 88 and that he ought to get down to show it to him that day. Bradford and Krueger returned to the Nelson Motors office where keys to the cars were kept.

Instead of taking the keys which Jentlie had laid out for him, Bradford took the keys to a 1951 Oldsmobile 88. Krueger left him at the office at about 7:45 p. m.

Thorvald Dahl, decedent's father-in-law, testified that on a number of occasions prior to March 12th Bradford had spoken to him about buying a certain 1951 Oldsmobile. The Dahl residence is about 30 miles from Eau Claire. At about 9 p. m. on March 12, 1955, Bradford came to the Dahl home and, after a little conversation about the family, Bradford told Dahl he was "driving that '51 Oldsmobile again;" that it was "the snappiest and goingest car he said that he ever drove." On being asked whether Bradford was trying to sell him a car that night, Dahl answered:

"I wouldn't say that he was, that that was just a purpose that he was there, but I know that is what he was trying to sell."

He also testified that Bradford explained that he had not brought his wife and family along because "he didn't take them along because he was out on this car, some car deal."

Bradford stayed for fifteen or twenty minutes. Mrs. Dahl was getting ready for bed. Shortly after leaving the Dahl home Bradford was killed near Brackett, a community located between the Dahl home and Eau Claire.

The examiner found:

"That on March 12, 1955, the deceased was attempting to sell a used car for his employer and had taken the used car out to interview individuals who were known to be interested in the purchase of that particular used car; that on his return to the city of Eau Claire, the deceased, Marvin L. Bradford, sustained fatal injury. The examiner concludes that at the time of his fatal injury the deceased was performing service growing out of and incidental to his employment by the respondent."

and entered an order awarding death benefits to the wife. The circuit court set the same aside, holding that at the time of the accident Bradford was on a mission personal to himself.

From the evidence before it the commission was entitled to find that Bradford was engaged in an attempt to sell a car for his employer at the time he met his death. The evidence as to Bradford's activities on the afternoon and evening of March 12, 1955, is not in dispute, though different inferences might reasonably be drawn therefrom. The inferences drawn by the commission are reasonable and permissible, and its findings are conclusive. *Hipke v. Industrial Comm.* (1952), 261 Wis. 226, 52 N. W. (2d) 401; *Gant v. Industrial Comm.* (1953), 263 Wis. 64, 56 N. W. (2d) 525; *American Motors Corp. v. Industrial Comm.* (1957), 1 Wis. (2d) 261, 83 N. W. (2d) 714.

The question in this case is not whether Bradford was obligated, under his contract of employment, to develop prospects for the sale of cars. It may be conceded that he was not hired by Nelson Motors as a car salesman. The evidence is, however, that Bradford, as well as the other employees of Nelson Motors, was encouraged by his employer to provide the company with leads or prospects for car sales. On numerous occasions in the past he had engaged in activities such as occupied him on the night of his death,—activities which had resulted in sales for Nelson Motors. The employer knew of this and approved.

The question is whether Bradford's activities on the evening of March 12, 1955, were carried on "for the purpose of advancing the employer's interests and did not violate any instruction to the contrary." *Anderson v. Industrial Comm.* (1947), 250 Wis. 330, 333, 27 N. W. (2d) 499. Obviously, they were in the interests of the employer and not only not contrary to instructions but fully approved of and encouraged by the employer.

*By the Court.*—Judgment reversed, and cause remanded with directions to reinstate the findings and order of the Industrial Commission.

FAIRCHILD, J., took no part.