Marshall E. BEGEL, Plaintiff-Respondent,

v.

WISCONSIN LABOR AND INDUSTRY REVIEW COMMISSION,
Defendant-Appellant,

UNIVERSITY OF WISCONSIN-MADISON and University of
Wisconsin System, Defendants-Co-Appellants.

Court of Appeals

*No. 00–1875. Submitted on briefs December 13,
2000.—Decided May 3, 2001.*

2001 WI App 134

(Also reported in 631 N.W.2d 220.)

 

On behalf of the defendant-appellant, the cause was submitted on the brief of *William W. Cassel* of *LIRC.*

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Robert T. Ward* of *Ward Law Firm* of Milwaukee.

Before Vergeront, Roggensack and Lundsten, JJ.

¶ 1. ROGGENSACK, J. The Labor and Industry Review Commission (LIRC) appeals the circuit court's reversal of LIRC's decision denying worker's compensation to Marshall E. Begel because LIRC concluded that Begel's injury was not compensable under the Worker's Compensation Act. Because we conclude that no substantial and credible evidence in the record supports LIRC's finding that Begel's supervisor did not ask him to perform the task that resulted in his injury and that LIRC's statutory interpretation of what constitutes the premises of the employer and its interpretation of the private errand doctrine are unreasonable, we affirm the decision of the circuit court reversing LIRC's denial of worker's compensation benefits.

## BACKGROUND

¶ 2. The following facts are undisputed. Begel was pursuing a master's degree in civil and structural

engineering at the University of Wisconsin-Madison. While enrolled, he also worked as a research assistant for the University under the supervision of Dr. David Bohnhoff, an associate professor in the University's Biological Systems Engineering Department. The nature of the research Begel performed required him to have periodic face-to-face meetings with Bohnhoff. In May 1997, Bohnhoff began building a new house. He and his family lived in a construction trailer at the construction site where he did not have a phone, and he did not keep regular office hours on campus. As a result, Begel was required by the nature of his employment to travel to the construction site to meet with Bohnhoff about his research. From time to time during his visits to the construction site, in addition to consulting about the research he was performing, Begel helped Bohnhoff work on his house. Bohnhoff did not pay Begel for this assistance.

¶ 3. On June 22, 1997, Begel traveled to the construction site to meet with Bohnhoff for instructions about the research. After they had finished talking about Begel's work, he volunteered to help Bohnhoff and his family attach sheets of paneling to floor joists. Begel stopped this task after approximately 20 minutes, when rain began. Bohnhoff then asked Begel to lift one end of a joist so that the exposed portion of the floor could be covered with a tarp. Begel lifted one end of the joist, then stepped into a hole in the floor and fell nine and one-half feet to the concrete floor of the basement, suffering a spinal cord injury that rendered him quadriplegic.

¶ 4. Begel filed a worker's compensation claim against the University. The University stipulated that an employer-employee relationship existed but disputed whether, at the time of his injury, Begel was

performing service growing out of and incidental to his employment. After an evidentiary hearing, the administrative law judge (ALJ) awarded worker's compensation benefits to Begel. LIRC reversed the ALJ's decision, concluding that: (1) Begel had not been injured while performing service growing out of and incidental to his employment because he had volunteered to assist Bohnhoff with tasks unrelated to his job duties; and (2) the injury did not arise out of Begel's employment because he had chosen to remain in the zone of special danger posed by the construction site after he had ceased his work-related activities. The circuit court reversed LIRC, concluding that Begel had responded to a request from his supervisor that he perform a private errand by moving the joist and therefore was covered under the Worker's Compensation Act. LIRC appeals the decision of the circuit court.

## DISCUSSION

**Standard of Review.**

¶ 5. We review the administrative agency's decision rather than that of the circuit court. *Currie v. DILHR*, 210 Wis. 2d 380, 386, 565 N.W.2d 253, 256 (Ct. App. 1997). Whether an individual's injury was sustained as a result of performing service growing out of and incidental to employment within the meaning of WIS. STAT. § 102.03(1) (1999–2000)[1] is a mixed question of law and fact that requires the application of a statutory standard to findings of fact. *Secor v. LIRC*, 232 Wis. 2d 519, 527, 606 N.W.2d 175, 178 (Ct. App. 1999).

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

LIRC's findings of historic fact must be upheld on review if there is credible and substantial evidence in the record on which reasonable persons could rely to make the same findings. *Currie*, 210 Wis. 2d at 386–87, 565 N.W.2d at 256–57; WIS. STAT. § 102.23(6).

¶ 6. Once the facts are established, however, the determination of whether those facts fulfill the statutory standard is a legal conclusion. *Keeler v. LIRC*, 154 Wis. 2d 626, 632, 453 N.W.2d 902, 904 (Ct. App. 1990). Therefore, we will review LIRC's determination that Begel was not injured while performing services growing out of and incidental to his employment as a question of law. We are not bound by an agency's conclusion of law in the same manner as by its factual findings. *West Bend Educ. Ass'n v. WERC*, 121 Wis. 2d 1, 11, 357 N.W.2d 534, 539 (1984). However, we may nonetheless defer to the agency's legal conclusion.

¶ 7. An agency's interpretation or application of a statute may be accorded great weight deference, due weight deference or *de novo* review, depending on the circumstances. *UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57, 61 (1996). We accord great weight deference when all four of the following requirements are met: the agency was charged by the legislature with the duty of administering the statute; the interpretation of the agency is one of long standing; the agency employed its expertise or specialized knowledge in forming the interpretation; and the agency's interpretation will provide uniformity and consistency in the application of the statute. *Id.* Under the great weight standard, we will uphold an agency's reasonable interpretation that is not contrary to the clear meaning of the statute, even if we determine that an

alternative interpretation is more reasonable. *Id.* at 287, 548 N.W.2d at 62.

¶ 8. Here, all four requirements for great weight deference have been met. LIRC is interpreting the statutory scheme of ch. 102 of the Wisconsin Statutes, as the legislature charged it to do. LIRC has administered the worker's compensation statutes for more than eighty years and, as a consequence, it has developed considerable expertise. LIRC's interpretation also provides uniformity and consistency in the application of the law. *Town of Russell Volunteer Fire Dep't v. LIRC*, 223 Wis. 2d 723, 733–34, 589 N.W.2d 445, 451 (Ct. App. 1998). Accordingly, we will sustain LIRC's interpretation of the statute if it is reasonable, even though another interpretation may be more reasonable. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 661, 539 N.W.2d 98, 102 (1995). "An unreasonable interpretation of a statute is one that directly contravenes the words of the statute, is clearly contrary to legislative intent, or is otherwise without [a] rational basis." *Heritage Mut. Ins. Co. v. Larsen*, 2001 WI 30, ¶ 27, 242 Wis. 2d 47, 68, 624 N.W.2d. 129, 136.

**Worker's Compensation Overview.**

¶ 9. The Worker's Compensation Act was enacted to afford prompt relief to injured employees who are entitled to compensation, and it is the intent of the legislature that it be liberally construed to include all tasks that an employee performs that can reasonably be said to come within the scope of the employment. *Nigbor v. DILHR*, 120 Wis. 2d 375, 382, 355 N.W.2d 532, 536 (1984); *Fels v. Industrial Comm'n*, 269 Wis. 294, 297, 69 N.W.2d 225, 226 (1955). While more

354

worker injuries are compensable under a worker's compensation claim than would be under a tort-based fault system, the amount of compensation an employer must pay is limited. *Heritage Mut.*, 2001 WI 30 at ¶ 5. However, a worker must meet certain conditions to be eligible for benefits under the Worker's Compensation Act. WISCONSIN STAT. § 102.03 provides, in relevant[2] part:

> **(1)** Liability under this chapter shall exist against an employer only where the following conditions concur:
>
> . . .
>
> (c) 1. Where at the time of the injury, the employee is performing service growing out of and incidental to his or her employment.
>
> . . .
>
> 4. The premises of the employer include the premises of any other person on whose premises the employee performs service.
>
> . . .
>
> (f) Every employee whose employment requires the employee to travel shall be deemed to be performing service growing out of and incidental to the employee's employment at all times while on a trip, except when engaged in a deviation for a private or personal purpose. Acts reasonably necessary for living or incidental thereto shall not be regarded as such a deviation.

■■■■■

¶ 10. As used in WIS. STAT. § 102.03(1)(c), the phrase "performing service growing out of and incidental to his or her employment" refers to the "time, place and circumstances under which the injury occurred."

----

[2] Other conditions of liability have not been challenged on appeal.

*Weiss v. City of Milwaukee*, 208 Wis. 2d 95, 104–105, 559 N.W.2d 588, 592 (1997) (citation omitted). It "includes activity that is reasonably required by the terms and conditions" of the employment. *Employers Mut. Liab. Ins. Co. v. DILHR*, 52 Wis. 2d 515, 521, 190 N.W.2d 907, 911 (1971). Generally, service is incidental to employment when "its performance inured to the benefit of the employer." *Kimberly-Clark Co. v. Industrial Comm'n*, 187 Wis. 53, 55, 203 N.W. 737, 738 (1925) (awarding benefits to worker injured while making himself a tool box to hold personally-owned tools he used during the course of his employment). For instance, "[t]he testing and repairing of machinery used in promoting the business of an employer is a service that is within the scope of the employment . . . ." *Fels*, 269 Wis. at 298, 69 N.W.2d at 226 (citation omitted). And it has been held that:

> one's employment by implication authorizes him to do, in addition to the things for which he is specifically employed, such further work in advancement of his employer's interests as is reasonably necessary at the time and place and which he has not been forbidden to do.

*Anderson v. Industrial Comm'n*, 250 Wis. 330, 334, 27 N.W.2d 499, 502 (1947).

**Private errand.**[3]

¶ 11. Begel asserts that moving the joist was a service growing out of and incidental to his employment under the private errand doctrine. Under this

---

[3] Some writers have referred to this doctrine as the special errand doctrine. *Fremont Indemnity Co. v. Workers' Comp. Appeals Board*, 137 Cal. Rptr. 847 (Cal. Ct. App. 1977).

doctrine, if a person in authority over the employee asks the employee to perform a service for the personal benefit of the employer or the employee's superior and the employee is injured during the performance of the task, his injury is one that grew out of and was incidental to his employment unless the request is "clearly unauthorized." *Continental Cas. Co. v. Industrial Comm'n*, 28 Wis. 2d 89, 96, 135 N.W.2d 803, 806 (1965); 2 LARSON'S WORKERS' COMPENSATION LAW § 27.04 (2000). LARSON'S explains the policy underlying the doctrine:

> When any person in authority directs an employee to run some private errand or do some work outside his normal duties for the private benefit of the employer or superior, an injury in the course of that work is compensable.
>
> . . . .
>
> The technical reason for these holdings is that, whatever the normal course of employment may be, the employer and his supervisory staff have it within their power to enlarge that course by assigning tasks outside the usual area. If they do not assign these tasks on the strength of the employer-employee relation on which compensability depends, then what is the source of authority by which the task is assigned?
>
> The practical reason for the rule is that any other view places the employee in an intolerable dilemma: if he complies with the order, he forfeits compensation protection; if he does not comply, he gets fired.

2 LARSON'S § 27.04.

■

¶ 12. The Wisconsin Supreme Court applied the private errand doctrine in *Continental Casualty* to analyze the worker's compensation claim of Hilty, a foreman at a feed mill. Hilty and Barr, his supervisor,

had gone to the mill's kennel to shoot two dogs belonging to the mill. When this was accomplished, Barr put the pistol in his overcoat pocket and asked Hilty to help him carry another dog that belonged to Barr's friend up to the second story of the mill. After they set the dog down, Barr asked Hilty to remove the pistol from his coat pocket. As Hilty removed the pistol, it fired, killing him. The supreme court concluded that Hilty died while performing services growing out of and incidental to his employment and that the accident arose out of the employment because:

> [T]he services in Barr's personal interest were rendered as an incident of the trip to and from the kennel; they were not only rendered at the direction of the superior, but were performed on the premises where Hilty's duties were ordinarily performed, and during his ordinary working hours.

*Continental Cas.*, 28 Wis. 2d at 96, 135 N.W.2d at 806. The court's use of the private errand doctrine in *Continental Casualty* also applied a reasonableness component to LARSON'S general statement when it instructed:

> Perhaps there may be circumstances under which directions given by a superior would be so clearly unauthorized that services rendered in response thereto could not be said to grow out of or be incidental to the employment.

*Id.*

¶ 13. No Wisconsin appellate decision since *Continental Casualty* has addressed what sort of directions from a superior would be clearly unauthorized. However, decisions from other jurisdictions suggest that very few would be. They have required only a "quite

tenuous" connection between the task that resulted in injury and the work the employee was hired to do.[4] This is reasonable because underlying the private errand doctrine is recognition of workplace realities. For example, a supervisor's request that the employee perform a private errand that benefits him rather than the employer places the employee in a difficult position. An employee is expected to follow the directions of his supervisor, but in so doing he could risk losing worker's compensation protection.[5] However, such a result would be directly contrary to the policies that drive the worker's compensation laws. Furthermore, the inequality in power between supervisor and employee makes it difficult for the employee to decline supervisor requests, however they are phrased. As the North Carolina Court of Appeals reasoned:

> The order or request need not be couched in the imperative. It is sufficient for compensation purposes that the suggestion, request or even the employee's mere perception of what is expected of him under his job classification, serves to motivate undertaking an injury producing activity.

[4] *Nugent Sand Co. v. Hargesheimer*, 71 S.W.2d 647 (Ky. 1934) (employee of sand and gravel company sent by company president to do work on the furnace in the president's home is covered for resulting injury); *Ferragino v. McCue's Dairy*, 26 A.2d 730 (N.J. Sup. 1942) (dairy employee instructed to help move a piano in a church that was a customer of the dairy is covered when injured); *Zapos v. Demas*, 161 A. 753 (Pa. Super. Ct. 1932) (waiter injured when he was sent to deliver groceries to the employer's home is covered).

[5] *Nichols v. Davidson Hotel Co.*, 333 S.W.2d 536, 546 (Mo. Ct. App. 1960) (holding that a bellhop's driving several girls who were friends of the hotel owner's wife to a party suffered an injury compensable under worker's compensation when he was killed in an automobile accident on his return trip).

*Stewart v. North Carolina Dep't of Corrections*, 225 S.E.2d 336, 338 (N.C. Ct. App. 1976); *see also Eckis v. Sea World Corp.*, 134 Cal. Rptr. 183, 187 (Cal. Ct. App. 1976). With the parameters of the private errand doctrine before us, we examine whether it applies to Begel's moving the joist.

¶ 14. At the hearing before the ALJ, Begel testified that he routinely traveled to and from Bohnhoff's construction site to talk with him about his research assignment, just as he did the day he was injured. This testimony is undisputed. Furthermore, because Begel traveled due to the requirements of his employment, deviation for a purpose personal to Begel did not prevent acts subsequent to the deviation from coming within the scope of his employment. *Heritage Mut.*, 2001 WI 30 at ¶ 15.

¶ 15. Once Bohnhoff and Begel had finished discussing the research project, Begel began helping Bohnhoff install flooring over the joists of the first floor of the house. Then, according to Begel:

> [I]t started to rain. The first floor was exposed. There was no roof so we started to take stuff down to put underneath the floor where it wouldn't get wet. Things like tools. And [Bohnhoff] asked me to help him move some broken joists so he picked up one end. I picked up the other and dragged it sideways. That's when I stepped into the hole.

Bohnhoff did not testify about the circumstances of the accident at the hearing. However, his statement to an insurance investigator was admitted into evidence, where he told the insurance investigator, "I was pretty direct. I said . . . let's move this . . . board over to the edge of this plastic. That sort of thing."

¶ 16. There was no testimony directly contrary to the statements of Begel and Bohnhoff, or any testimony that could support a contrary inference. Nonetheless, when analyzing whether the private errand doctrine applied, LIRC wrote:

> When [Begel's] injury occurred, his labor was not incidental to the performance of any work for the employer, it was performed on the premises of a personal residence not owned by the employer, and it was performed as a volunteer activity on [Begel's] personal time. Furthermore, there was no evidence to the effect that Professor Bohnhoff asked or ordered [Begel] to perform the labor. In fact, Professor Bohnhoff's written description of events verified that it was [Begel] who asked what he could do to help. Finally, the commission infers that even were Professor Bohnhoff's acceptance of [Begel's] volunteered labor to be construed as a request for such labor, it would have to be found to be clearly unauthorized personal utilization of such labor, unrelated to [Begel's] duties as a research assistant or student.

¶ 17. We conclude that LIRC erred both in making a finding of fact without substantial and credible evidence in the record to support it and in arriving at legal conclusions that were unreasonable. First, no substantial and credible evidence supports LIRC's finding that Bohnhoff did not ask Begel to do the task that led directly to his injury. As we pointed out above, only Begel and Bohnhoff provided evidence of how Begel became engaged in the task of moving the joist. LIRC seemed to believe that because Begel offered to help screw panels of flooring in place, all tasks after that time were outside the scope of his employment.

However, as the supreme court instructed in *Heritage Mut.* where a traveling employee had gone to a tavern to drink (a deviation from his job) but suffered a compensable injury while opening a door to his trailer (an act reasonably necessary for living) after returning from the tavern, the focus for a worker's compensation claim is on the specific task the employee was performing when the injury occurred. *Heritage Mut.*, 2001 WI 30 at ¶ 15. The focus is not on acts unrelated to the employment that may have occurred earlier. Here, the task that Begel was performing when he was injured was moving the joist, which he did in response to Bohnhoff's request.

¶ 18. Second, it is undisputed that Begel's employment required him to travel to the construction site; therefore, that site was the premises of the employer. WIS. STAT. § 102.03(1)(c)4. LIRC's conclusion that the injury occurred in a location that was not the premises of the University is unreasonable because it contradicts the plain wording of § 102.03(1)(c)4., which unambiguously states that "[t]he premises of the employer include the premises of any other person on whose premises the employee performs service." Therefore, that the injury occurred on the premises of the employer is a factor favoring the conclusion that the injury arose out of and was incidental to Begel's employment.

¶ 19. Third, Begel had come to the construction site because his work required him to do so. He had flexible hours, just as many employees do, and, as with the employee in *Continental Casualty*, the service rendered benefited his supervisor. Given the relationship between Begel and Bohnhoff, it would have been diffi-

cult for Begel to refuse so simple a request. Fourth, Bohnhoff's request that Begel help him move the joist was not so clearly unauthorized that Begel's response could not be said to grow out of or be incidental to the employment. Bohnhoff's request that Begel help him move the joist was no more out of the ordinary than the supervisor's request that the employee take a gun out of his pocket as occurred in *Continental Casualty*. Nothing about the request required Begel to do an illegal act or a task that was exceptionally dangerous to himself or to others. Therefore, we conclude that, under the private errand doctrine, Begel was performing services growing out of and incidental to his employment at the time of his injury. Accordingly, his injury is compensable under the Worker's Compensation Act.[6]

## CONCLUSION

¶ 20. Because we conclude that no substantial and credible evidence in the record supports LIRC's finding that Begel's supervisor did not ask him to perform the task that resulted in his injury and that LIRC's statutory interpretation of what constitutes the premises of the employer and its interpretation of the private errand doctrine are unreasonable, we affirm the decision of the circuit court reversing LIRC's denial of worker's compensation benefits.

*By the Court.*—Order affirmed.

---

[6] Because we affirm the circuit court based on the private errand doctrine, we do not address the question of compensation under the other theories for recovery raised by Begel.