ABC FOR HEALTH, INC. and Wisconsin Coalition for Advocacy, Petitioners-Appellants-Cross-Respondents,†

AARP, Petitioner,

v.

COMMISSIONER OF INSURANCE, Respondent-Respondent,

BLUE CROSS/BLUE SHIELD UNITED OF WISCONSIN, Interested Party-Respondent-Cross-Appellant.

Court of Appeals

*No. 00–2944. Submitted on briefs June 11, 2001.—Decided December 6, 2001.*

2002 WI App 2

(Also reported in 640 N.W.2d 510.)

---

† Petition to review denied 3-19-02.

---

60

On behalf of the petitioners-appellants-cross-respondents, the cause was submitted on the briefs of *Robert A. Peterson, Jr.* of *ABC for Health, Inc.* of Madison; *Jeff Spitzer-Resnick* of *Wisconsin Coalition for Advocacy* of Madison; and *Michael Schuster* of *AARP* of Washington, D.C.

On behalf of the respondent-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Peter C. Anderson*, assistant attorney general.

On behalf of the interested party-respondent-cross-appellant, the cause was submitted on the briefs of *Joseph C. Branch, Michael D. Flanagan*, and *Thomas R. Hrdlick* of *Foley & Lardner* of Milwaukee; *Stephen P. Hurley* of *Hurley Burish & Milliken SC* of Madison; and *Stephen E. Bablitch* of *Bablitch Law Office* of Madison.

Brief of amicus curiae was filed by *William J. Toman* and *Valerie Bailey-Rihn* of *Quarles & Brady LLP* of Madison on behalf of *Medical College of Wisconsin, Inc.*

Brief of amicus curiae was filed by *Thomas M. Pyper* and *Cynthia L. Buchko* of *Whyte Hirschboeck Dudek, S.C.* of Madison on behalf of the *University of Wisconsin Medical School.*

Before Roggensack, Deininger and Lundsten, JJ.

63

¶ 1. ROGGENSACK, J. ABC for Health, Inc., Wisconsin Coalition for Advocacy and AARP[1] (collectively, ABC) appealed the circuit court's decision to affirm the Commissioner of Insurance's approval of the conversion of Blue Cross/Blue Shield United of Wisconsin (BC/BSUW) from a nonprofit, non-stock insurance corporation to a for-profit, stock insurance corporation. BC/BSUW cross-appealed, challenging the circuit court's lack of a decision on its contention that ABC does not have standing to contest the conversion plan. ABC does not object to the actual conversion, but rather, it objects to the proposed use of the conversion proceeds, arguing that the use approved by the Commissioner violates the cy pres doctrine and Wis. Stat. §§ 701.10 and 181.1302(3)(b) (1999–2000).[2] We affirm the judgment of the circuit court without deciding the standing issue raised by BC/BSUW because we conclude that (1) neither the cy pres doctrine, nor § 701.10, nor § 181.1302(3) applies to the conversion of BC/BSUW, and (2) the Commissioner's approval of the plan of conversion represents the more reasonable interpretation and application of the statutes the Commissioner is charged with administering.

## BACKGROUND

¶ 2. BC/BSUW was originally incorporated in 1939 as Associated Hospital Service, Inc., a nonprofit, non-stock hospital service corporation.[3] In 1979, Associated Hospital Service, Inc. took over the business of a

---

[1] AARP has now been voluntarily dismissed from the appeal.

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[3] Its initial articles of incorporation provided that upon dissolution the net assets of the company were to be disbursed

surgical care plan in Milwaukee and reorganized as BC/BSUW.[4] In 1999, BC/BSUW filed an application for approval of a plan to convert from a nonprofit, non-stock corporation to a for-profit, stock corporation under WIS. STAT. § 613.75, which incorporates WIS. STAT. § 611.76, with the Office of the Commissioner of Insurance.

¶ 3. Pursuant to the plan of conversion, BC/BSUW is to become a wholly-owned subsidiary of United Heartland Group, Inc., a stock corporation which will act as a holding company for BC/BSUW. All of the stock of the holding company will then be transferred to Blue Cross & Blue Shield Public Health Foundation and subsequently sold to the public by the Foundation. The capital raised through the Foundation's sale of the stock in the holding company will be used to fund public health initiatives through the Medical College of Wisconsin[5] and the University of Wisconsin Medical School.[6]

---

*pro rata* to participating hospitals with which Associated Hospital Service, Inc. had had contracts for patient services.

[4] In the restated articles filed in 1979, a paragraph was added permitting distributions upon dissolution to "the medical colleges." Additionally, BC/BSUW's articles of incorporation were changed in 1998 to permit BC/BSUW's board to establish a plan to distribute the corporation's unrestricted net assets if dissolution were to occur. All restricted net assets were to be distributed in accord with the restrictions present upon receipt of the assets by the company.

[5] The Medical College of Wisconsin works "in the interest of public and private health . . . to give free medical, surgical and hospital treatment and care to the sick and afflicted." *See* Commissioner's Findings of Fact, ¶ 22, which are uncontested by ABC.

[6] The University of Wisconsin Medical School serves "the public interest by promoting service to the public . . . designed to educate people and improve the human condition." Its

¶ 4. Prior to deciding whether to approve the plan of conversion, including how the proceeds from the sale of the stock would be used, the Commissioner conducted Class 1 contested case hearings on BC/BSUW's application for conversion. As part of this hearing process, the Commissioner appointed an appraisal committee which met numerous times to review the structure of the conversion plan, the value of BC/BSUW and the proposed uses for the proceeds of the stock sale. The Commissioner also conducted public information hearings throughout the state where numerous people testified or submitted written statements. ABC submitted testimony as part of those hearings and it also cross-examined certain witnesses.

¶ 5. When participating in the hearings, ABC asserted that the cy pres doctrine prevents the use of the stock sale proceeds in the manner envisioned by the plan. However, the Commissioner concluded that the cy pres doctrine did not apply; that BC/BSUW was never a charitable trust; and that the conversion plan, as modified, complied with the requirements of Wis. Stat. § 611.76(7)(a). Although ABC does not object to the actual conversion from a nonprofit, non-stock corporation to a for-profit, stock corporation, it does object to the Foundation's use of the sale proceeds as approved by the Commissioner. The circuit court affirmed the Commissioner. ABC appealed, and BC/BSUW cross-appealed, contending that ABC has no standing to challenge the conversion.

mission is, as is that of the Medical College of Wisconsin, to provide health care education, research, patient care and community service. *See* Commissioner's Findings of Fact, ¶¶ 22, 23, which are uncontested by ABC.

## DISCUSSION

**Standard of Review.**

¶ 6. We review the decision of the Commissioner, rather than that of the circuit court. *DOR v. Johnson Welding & Mfg. Co.*, 2000 WI App 179, ¶ 6, 238 Wis. 2d 243, 617 N.W.2d 193. We affirm an agency's findings of fact if they are supported by substantial evidence in the record. WIS. STAT. § 227.57(6); *Madison Gas & Elec. Co. v. Public Serv. Comm'n of Wisconsin*, 109 Wis. 2d 127, 133, 325 N.W.2d 339, 342 (1982).

¶ 7. Whether WIS. STAT. § 611.76(7)(a) has been satisfied by the conversion plan approved by the Commissioner and whether the cy pres doctrine or WIS. STAT. § 701.10 or WIS. STAT. § 181.1302(3)(b) precludes approval of the conversion plan are questions of law. While we are not bound by an agency's conclusions of law in the same manner as we are bound by its factual findings, we may nonetheless defer to an agency's legal conclusions. *Begel v. LIRC*, 2001 WI App 134, ¶ 6, 246 Wis. 2d 345, 631 N.W.2d 220.

¶ 8. If a statute is ambiguous, we accord the agency's interpretation or application of that statute either great weight deference, due weight deference or *de novo* review, depending on the circumstances. *Id.* at ¶ 7 (citing *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 284, 548 N.W.2d 57, 61 (1996)). We accord great weight deference only when all four of the following elements are met: (1) the agency was charged by the legislature with the duty of administering the statute; (2) the interpretation of the agency is one of long-standing; (3) the agency employed its expertise or special knowledge

67

in forming the interpretation; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute. *UFE*, 201 Wis. 2d at 284, 548 N.W.2d at 61. We apply due weight deference when "the agency has some experience in an area, but has not developed the expertise which necessarily places it in a better position to make judgments regarding the interpretation of the statute than a court." *Id.* at 286, 548 N.W.2d at 62. This deference is largely accorded the administrative agency because the legislature has charged the agency with the enforcement of the statute in question. *Id.* Under this standard, we will not overturn a reasonable agency decision that furthers the purpose of the statute unless we determine that there is a more reasonable interpretation under the applicable facts. *Id.* at 286–87, 548 N.W.2d at 62. Finally, we will apply *de novo* review to an agency's legal conclusion if any one of the following is true: (1) the legal issue is one of first impression; (2) there is no evidence of any special agency expertise or experience in dealing with the legal issue presented; or (3) the agency's position on the legal issue has been so inconsistent as to provide no real guidance. *DOR v. Caterpillar, Inc.*, 2001 WI App 35, ¶ 7, 241 Wis. 2d 282, 625 N.W.2d 338.

■

¶ 9. Here, although the parties agree that the Commissioner has not ruled on a plan of conversion such as the one presented by BC/BSUW, the Commissioner has acted on at least two conversion applications for mutual insurance companies. Additionally, the Commissioner is charged with administering Wis. Stat. §§ 611.76(7)(a) and 613.75. Therefore, a decision by the Commissioner is likely to create more certainty among those who choose to petition for conversions in the

future. Accordingly, we apply due weight deference to the Commissioner's conclusion that the conversion plan satisfies § 611.76(7)(a), and we will sustain it unless we conclude that another interpretation of the statute is more reasonable.

¶ 10. However, the same cannot be said for the Commissioner's determinations under chs. 181 and 701, as those are not chapters that the legislature designated the Commissioner to administer. Therefore, we will apply *de novo* review to whether the statutes in chs. 181 and 701 cited by ABC apply to this transaction. Additionally, we will apply *de novo* review to whether the cy pres doctrine applies to this insurance company conversion because cy pres is a legal doctrine developed through court decisions, and the administrative agency is interpreting those decisions. *See Motola v. LIRC*, 219 Wis. 2d 588, 597, 580 N.W.2d 297, 300 (1998).

**Cy Pres Doctrine.**

¶ 11. The cy pres doctrine may be applied where there has been a bequest to a charity and the exact intent of the donor cannot be accomplished. *Bletsch v. Barth*, 25 Wis. 2d 40, 48, 130 N.W.2d 275, 278 (1964). Therefore, a court of equity will attempt to accomplish the next best similar charitable purpose. *Board of Trs. of Beloit College v. Farrow*, 29 Wis. 2d 506, 515, 139 N.W.2d 72, 77 (1966). WISCONSIN STAT. § 701.10 codifies the common law doctrine of cy pres in regard to "charitable trusts." A charitable trust is one in which the "income or principal presently or in the future must be used by the trustee exclusively for a charitable purpose as defined in s. 701.10(1)." WIS. STAT. § 701.01(2). A charitable purpose is

69

one focused on "relief of poverty, advancement of education, advancement of religion, promotion of health, governmental or municipal purposes or any other purpose the accomplishment of which is beneficial to the community." Section 701.10(1). A charitable trust is a type of "established charitable entity," which entity is defined in § 701.10(4) as a "corporation, unincorporated association or trust operated exclusively for a charitable purpose. . . ."

¶ 12. ABC seeks to invalidate the uses permitted by the plan of conversion for the proceeds of the sale of the stock through the doctrine of cy pres or the application of Wis. Stat. § 701.10. However, even if we were to assume, *arguendo,* that either common law cy pres or § 701.10 were a tool with the potential to invalidate BC/BSUW's conversion plan, ABC must show that BC/BSUW is an entity operated exclusively for charitable purposes, *see Bletsch*, 25 Wis. 2d at 48, 130 N.W.2d at 278, and that the assets of BC/BSUW were gifts to an entity which operated exclusively for charitable purposes. *See* § 701.10(1). ABC has not done so.

¶ 13. The record conclusively shows that BC/BSUW has not been operated exclusively for charitable purposes. At least since 1979 when Associated Hospital Service, Inc. was reorganized as BC/BSUW, it has provided health insurance to individuals who paid premiums. Although it operated as a nonprofit corporation, being a nonprofit, non-stock corporation is different from operating exclusively as a charitable entity. For example, BC/BSUW has not qualified for I.R.C. § 501(c)(3) (2000) status because that section requires, among other things, that the organization be operated "exclusively for religious, charitable . . . or educational purposes." Additionally, there is nothing in

70

the record which shows BC/BSUW was created or maintained through charitable gifts. It sold insurance to people who paid premiums to become policyholders. Therefore, we conclude that the Commissioner was correct in determining that neither the cy pres doctrine nor WIS. STAT. § 701.10 is an impediment to the plan of conversion.[7]

## WIS. STAT. §§ 181.1301 and 181.1302.

¶ 14. ABC contends that the acquisition of BC/BSUW's assets by the holding company, which in turn issued stock equivalent to the assets' value and then transferred the stock to the Foundation, was a distribution which violated WIS. STAT. §§ 181.1301 and 181.1302(3). ABC argues that because the Foundation will sell the former assets of BC/BSUW as shares of stock and then donate the shareholders' payments to the Medical College of Wisconsin and the University of Wisconsin Medical School, BC/BSUW has made an illegal distribution. ABC argues that only distributions which are in accord with the distributions which could have been made on dissolution under BC/BSUW's original 1939 articles of incorporation are lawful. We conclude that ABC's argument is without merit for a number of reasons.

¶ 15. First, a corporate conversion is not a corporate dissolution. A dissolution terminates the corporation's legal existence and is the event immediately proceeding the liquidation or winding-up of a

---

[7] ABC also relies on WIS. STAT. § 613.69 to bolster its contentions regarding cy pres and WIS. STAT. §§ 181.1301 and 181.1302. However, as this argument was not made to either the Commissioner or the circuit court, we do not consider it here. *County of Columbia v. Bylewski*, 94 Wis. 2d 153, 171, 288 N.W.2d 129, 138–39 (1980).

corporation's business. BLACK'S LAW DICTIONARY 486 (7th ed. 1999). The methods for dissolution of a solvent insurance corporation are set out in WIS. STAT. § 613.74. Those statutes envision a cessation of doing business by the corporation. A conversion, on the other hand, does not end the corporation's on-going business activities, but instead is a change in the corporate form of doing business. BLACK'S LAW DICTIONARY at 332. The methods to convert a service insurance corporation into a stock or a mutual insurance corporation are set out in WIS. STAT. § 613.75, which incorporates some of the provisions of WIS. STAT. § 611.76.

¶ 16. Second, BC/BSUW's articles of incorporation were amended in 1979 to permit distributions to "the medical colleges" upon dissolution. ABC does not argue that BC/BSUW's members were without authority to amend its articles of incorporation. Nor could it so contend, as the articles of incorporation filed in 1939 specifically permit amendments. Therefore, we conclude that ABC's reliance on the 1939 articles is misplaced.

¶ 17. Third, while it is true that WIS. STAT. § 181.1301 states that "[e]xcept as provided in s. 181.1302, a corporation may not make any distributions," the payments to the medical schools do not fit within the statutory definition of a "distribution." WISCONSIN STAT. § 181.0103(10) instructs that " '[d]istribution' means the payment of a dividend or any part of the assets, income or profit of a corporation to its members, directors or officers . . . ." Here, the objected-to payments to the Medical College of Wisconsin and the University of Wisconsin Medical School are not payments to BC/BSUW's, the holding company's or the Foundation's members, directors or officers. Additionally, if we were to stop our examination with the

transfer of the newly issued stock to the Foundation, which is proposed as a non-stock corporation organized under ch. 181, exempt from federal income taxes under I.R.C. § 501(c)(4) and without members, we would also conclude that no distribution occurred. The Foundation is not a member, director or officer of the holding company or of BC/BSUW. Therefore, the stock transfer to the Foundation is not a distribution as defined in § 181.0103(10).

¶ 18. Fourth, Wis. Stat. § 181.1302 was created by 1997 Wis. Act 79, § 48, effective January 1, 1999, which repealed and recreated ch. 181. Section 181.1302 permits distributions from non-stock corporations, which distributions had previously been prohibited.[8] Those changes were in accord with the legislature's decision to permit non-stock corporations to operate on a for-profit basis. *See* Leg. Ref. Bureau Analysis. However, there is nothing in chs. 181, 611 or 613 to indicate that those revisions were intended to impose new obligations on a non-stock corporation seeking approval for a statutory conversion.

¶ 19. And finally, BC/BSUW's plan of conversion appears to have been drawn to equitably address the value BC/BSUW accumulated while it was a nonprofit entity so that the Commissioner would conclude that conversion was not contrary to the interests of the public, pursuant to Wis. Stat. § 611.76(7). The plan did so through a public stock sale and the immediate gifting of all the proceeds received from the sale to the Medical College of Wisconsin and the University of Wisconsin Medical School. By requiring the gifting of all the proceeds, the plan prevents the new shareholders who

---

[8] *See* Wis. Stat. § 181.28 (1995–96).

pay for shares in the for-profit corporation from acquiring an interest in the value BC/BSUW accumulated as a nonprofit entity, and it affords the benefit of that value to two other entities that are operated to serve the public good, the Medical College of Wisconsin and the University of Wisconsin Medical School. Accordingly, we agree with BC/BSUW that Wis. Stat. §§ 181.1301 and 181.1302 cannot be applied to reverse the Commissioner's approval of BC/BSUW's plan of conversion, but rather, compliance with the relevant provisions of § 611.76 is the proper focus for determining whether the conversion is lawful.

## Wis. Stat. §§ 611.76 and 613.75.

¶ 20. Wisconsin Stat. § 613.75 authorizes the conversion of a service insurance corporation into a stock insurance corporation. It states in relevant part:

> **(1)** AUTHORIZATION. Any service insurance corporation may be converted into a stock insurance corporation under ch. 611 upon complying with sub. (2) and as much of s. 611.76 as is applicable
> . . . .

Wisconsin Stat. § 611.76 requires a resolution by the board of the company petitioning to convert, stating that the conversion is in the best interests of the policyholders, the reasons for and the purposes of the proposed conversion and its anticipated effect on the policyholders. Section 611.76(2). The Commissioner must then investigate the application and plan of conversion, appoint an appraisal committee, examine the financial circumstances of the company and determine whether it is operated according to law and whether it will continue to be lawfully operated under

the plan of conversion. Section 611.76(3)-(4). Hearings are to be held before a decision is made under subsec. (7). Section 611.76(6).

■

¶ 21. After a full review of BC/BSUW's application and plan of conversion, the Commissioner concluded that the requirements of Wis. Stat. § 611.76 that are applicable to the proposed conversion had been met. The Commissioner also concluded that the reasonable expectations of the public would be served by the plan and that the plan did not violate the law, was not contrary to the interests of the public or to the interests of the policyholders. The Commissioner further concluded that the plan was not detrimental to the safety and soundness of the insurer or the contractual rights and reasonable expectations of the policyholders. None of these conclusions, except as they are impacted by the proposed use of the stock sale proceeds which we have discussed in the preceding sections of this opinion, is contested by ABC; therefore, we do not examine them in detail. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285, 292 (Ct. App. 1998) ("[I]n order for a party to have an issue considered by this court, it must be raised and argued within its brief."). Accordingly, we conclude that the Commissioner's interpretation of Wis. Stat. §§ 613.75 and 611.76 as applied to the BC/BSUW conversion from a nonprofit, non-stock corporation to a for-profit, stock corporation is reasonable and that denying approval is not more reasonable. Therefore, we affirm the decision of the circuit court.

## CONCLUSION

¶ 22. We affirm the judgment of the circuit court without deciding the standing issue raised by

BC/BSUW because we conclude that (1) neither the cy pres doctrine, nor WIS. STAT. § 701.10, nor WIS. STAT. § 181.1302(3) applies to the conversion of BC/BSUW, and (2) the Commissioner's approval of the plan of conversion represents the more reasonable interpretation and application of the statutes the Commissioner is charged with administering.

*By the Court.*—Judgment affirmed.